EUGENE I. ANNIS
LUKINS & ANNIS, P.S.
1600 Washington Trust Financial Center
717 W Sprague Avenue
Spokane, WA 99201-0466
(509) 455-9555

CHRISTOPHER J. MCNEVIN, *Pro Hac Vice*
THOMAS A. CAMPBELL, *Pro Hac Vice*
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
(213) 488-7100

Attorneys for Defendant Teck Cominco Metals Ltd.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT YAKIMA

| | |
|---|---|
| JOSEPH A. PAKOOTAS, an individual and enrolled member of the Confederated Tribes of the Colville Reservation; and DONALD L. MICHEL, an individual and enrolled member of the Confederated Tribes of the Colville Reservation, and the CONFEDERATED TRIBES OF THE COLVILLE RESERVATION, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) |
| And | ) |
| STATE OF WASHINGTON, | ) ) |
| Plaintiff-Intervenor | ) ) ) |
| v. | ) ) |
| TECK COMINCO METALS LTD., a Canadian corporation, | ) ) ) ) |
| Defendant. | ) ) |

NO. CV-04-0256-LRS

TECK COMINCO METALS LTD.'S RESPONSE TO CONFEDERATED TRIBES OF THE COLVILLE RESERVATION'S MOTION TO DISMISS COUNTERCLAIM PURSUANT TO F.R.C.P. 12(b)(6)

Date: April 30, 2009
Time: 2:30 p.m.

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                                           1

1    Plaintiff Confederated Tribes of the Colville Reservation ("Tribes") argues that

2    it, unlike all other polluters, including federal, state and local governmental bodies, is

3    not responsible under CERCLA for its contamination.

4    In asserting this position, Plaintiff first argues that the provision in CERCLA

5    defining the term "person" does not specifically mention tribes and that the language

6    of CERCLA should be "strictly construed."  Plaintiff ignores literally hundreds of

7    reported decisions pointing out that CERCLA is a hastily drafted and poorly worded

8    statute that the Ninth Circuit has held must be liberally, not strictly, construed, to

9    effectuate Congress' intent to place cleanup costs on the responsible parties.

10    Second, the Tribes asserts that EPA "generally" has not viewed tribes as liable

11    parties in its administration of CERCLA, based only on an EPA loan and grant

12    guidance document and a letter which <u>defers</u> a decision on tribal liability while

13    acknowledging that tribal corporations can be liable.  Plaintiff asserts that *Chevron*

14    deference should apply to these two documents, but fail to point out that *Chevron*

15    deference hinges on an agency interpretation pursuant to Congressional delegation of

16    rulemaking authority, which Plaintiff did not show to have occurred.  Plaintiff also

17    ignores EPA's "Indian Policy," which does <u>not</u> state that Indians are exempt from

18    liable party status, but instead states that EPA will consider judicial action against

19    Indian tribes when necessary.

20    Third, Plaintiff argues that "Indian law canons of construction" require that

21    ambiguity in the wording of a statute should be resolved in favor of tribes. In fact the

22    courts have held that this approach to interpretation may be applied only to Indian

23    treaties and statutes written for the protection of Indians, not to statutes of general

24    application such as CERCLA.

25

26

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                    2

## I.  CERCLA MUST BE LIBERALLY CONSTRUED TO EFFECT ITS REMEDIAL PURPOSES.

CERCLA was passed in haste in the last month of 1981, and is widely recognized as a product of legislative speed that resulted in poor draftsmanship. Numerous courts have commented that CERCLA's provisions "lack clarity and conciseness," and have found CERCLA to be "vague, contradictory, and lacking a useful legislative history." *Uniroyal Chem. Co., Inc. v. Deltech Corp.*, 160 F.3d 238, 246 (5th Cir. 1998).[1] In the case at bar, the Ninth Circuit has said that "neither a logician nor a grammarian will find comfort in the world of CERCLA." *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1079 (9th Cir. 2006), *quoting Carson Harbor Village, Ltd. v. Unocal Corp.*, 270 F.3d 863, 883 (9th Cir. 2001).

While the language of CERCLA is not particularly clear, what is clear is the intent of Congress to ensure that the "polluters pay" for cleanup.  The Ninth Circuit has held that CERCLA has two primary purposes:  "[1] to ensure the prompt and effective cleanup of waste disposal sites, and [2] to assure that parties responsible for hazardous substances bore the cost of remedying the conditions they created." *Carson Harbor*, 270 F.3d at 880.

Given the importance of these goals, the Ninth Circuit has held that CERCLA must be construed liberally, not strictly: "We construe CERCLA liberally to achieve these goals." *Carson Harbor*, 270 F.3d at 881, *quoting Kaiser Aluminum & Chem. Corp. v. Catellus Development Corp.*, 976 F.2d 1338, 1340 (9th Cir. 1992); *see also United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258 and n.5 (3d Cir. 1992); *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1198 (2d Cir. 1992).

---

[1]  A quick search on Lexis and Westlaw identified approximately 170 cases making similar observations on the poor drafting of CERCLA.

LAW OFFICES
LUKINS & ANNIS
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

1    These particular principles apply to the construction of the term "person," to

2    which Congress gave a broad and inclusive definition in CERCLA. "Person" is

3    defined as "[A]n individual, firm, corporation, association, partnership, consortium,

4    joint venture, commercial entity, United States Government, State, municipality,

5    commission, political subdivision of a State, or any interstate body." 42 U.S.C.

6    § 9601(21). This definition itself has been held to be subject to the rules of liberal

7    construction. *See, e.g.*, *Town of Oyster Bay v. Occidental Chem. Corp.*, 987 F. Supp.

8    182, 201 (E.D.N.Y. 1997) (interpreting the term "person" to include a dissolved

9    corporation in order to promote the goals of CERCLA).

10    The Ninth Circuit has given direction on the breadth of interpretation of the

11    term "person" in this very case. *Pakootas*, 452 F.3d at 1076-77. The issue arose as

12    to Teck Cominco, because "On its face, this definition [of "person"] includes

13    corporations such as Teck, although the definition does not indicate whether foreign

14    corporations are covered." The court cited the Supreme Court in *United States v.*

15    *Palmer*, 16 U.S. (3 Wheat) 610, 631 (1818), as setting "two benchmarks for

16    determining whether terms such as 'any person' apply to foreign persons: (1) the

17    state must have jurisdiction over the party, and (2) the legislature must intend for the

18    term to apply." 452 F.3d at 1076. Under this approach the Tribes should be

19    considered a "person" under CERCLA.

20    The first part of this test, jurisdiction over the Tribes, is not an issue here. The

21    Tribes has not asserted a lack of *in personam* jurisdiction, and since it is the plaintiff

22    and has invoked the jurisdiction of this Court, it would be odd for it to do so.

23    In the second part of its analysis, rather than examine the intent of Congress to

24    apply the term "person" to the particular entity (there, a foreign corporation), the

25    Ninth Circuit said that the issue was whether Congress intended CERCLA "to apply

26    to the situation":

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

The second *Palmer* benchmark is that the legislature must intend for the statute to apply to the situation.  Except for the statutory definition of "any person," CERCLA is silent about *who* is covered by the Act.  But CERCLA is clear about what is covered by the Act.  CERCLA liability attaches upon release or threatened release of a hazardous substance into the environment.  CERCLA defines "environment" to include "any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air *within the United States or under the jurisdiction of the United States.*"  § 9601(8) (emphasis added).  CERCLA's purpose is to promote the cleanup of hazardous waste sites where there is a release or threatened release of hazardous substances into the environment within the United States.  *See ARC Ecology v. U.S. Dep't of the Air Force*, 411 F.3d 1092, 1096-98 (9th Cir. 2005) (citing legislative history demonstrating that Congress intended CERCLA to apply to cleanup hazardous waste sites in the United States).  Because the legislature intended to hold parties responsible for hazardous waste sites that release or threaten release of hazardous substances into the United States environment, the second *Palmer* benchmark is satisfied here.

*Pakootas*, 452 F.3d at 1077 (italics in original).

This reasoning applies with equal force in the case of the Tribes.  As with foreign corporations, CERCLA is <u>silent</u> on the issue of whether tribes are covered as "persons." Nonetheless, under the Ninth Circuit's analysis, CERCLA is clear about "what is covered," and because the Legislature intended to hold parties responsible for their hazardous waste problems, the second benchmark is satisfied.

Further, in this case the Ninth Circuit has said that "[w]e hesitate to endorse a statutory interpretation that would leave a gaping and illogical hole in the statute's coverage. . . ." *Pakootas*, 452 F. 3d at 1081.  Construing the term "person" in CERCLA to exempt Indian tribes would leave exactly such a hole for two reasons.

First, the Bureau of Indian Affairs manages relationships with 562 Indian tribes.  It manages 66 million acres (103,125 square miles), of which 52.7 million acres (82,343 square miles) belong to Indian tribes and individuals.[2]  All of this would be affected by an opinion of this Court exempting Indian tribes from potential

---

[2] http://www.doi.gov/bia/quick_facts.html, last viewed on January 29, 2009.

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                                      5

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

1  CERCLA liability.  Should this Court hold that the Tribes cannot be a person under

2  CERCLA, this will create a "hole" in CERCLA's liability net, leaving Indian tribes,

3  unlike all other units of local, state or federal government, free from the obligation to

4  clean up their own contamination.  Under the Tribes' interpretation of CERCLA, an

5  Indian tribe could never, under any circumstances, be found to be a responsible party

6  under CERCLA.  As a result, an Indian tribe could literally operate a dump for the

7  disposal of hazardous substances, with complete impunity under CERCLA.  Such a

8  constricted reading of the statute would "thwart the underlying purposes of the

9  statutory scheme" and "lead to an absurd result."  *Commodity Futures Trading*

10  *Comm'n v. P.I.E., Inc.*, 853 F.2d 721, 725 (9th Cir. 1988).

11      Second, the Tribes' position would leave a gaping hole of the type which

12  concerned the Ninth Circuit because it would exempt tribes from a provision of

13  CERCLA intended to prevent overreaching claims.  In a recent analysis of CERCLA,

14  the Ninth Circuit quoted from *Atlantic Research Corp. v. United States*, 459 F.3d

15  827, 835 (8th Cir. 2006), affirmed by the Supreme Court at 551 U.S. 128, 127 S. Ct.

16  2331 (2007): "CERCLA, itself, checks overreaching liable parties:  If a plaintiff

17  attempted to use § 107 to recover more than its fair share of reimbursement, a

18  defendant would be free to counterclaim for contribution under § 113(f)."  *Kotrous v.*

19  *Goss – Jewett Co. of Northern Cal.*, 523 F.3d 924, 933 (9th Cir. 2008).  The Tribes'

20  position is that it is exempt from such counterclaims.  This would leave a gaping hole

21  because it would mean that Indian tribes are free to seek more than their fair share of

22  costs from other parties without being subject to a counterclaim to check the

23  overreaching.  There is no good reason to create such a hole in CERCLA's statutory

24  scheme.

25      Teck Cominco's counterclaim against the Tribes, which must be taken as true

26  for purposes of this motion, alleges material contamination from the Tribes'

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

1    ownership and leasing of mine sites, and the storage of tailings and other
2    unremediated sources of heavy metals on tribal property.  It would be wholly
3    inconsistent with the intent of Congress in establishing the broad liability regime in
4    CERCLA, if this Court narrowly construed the definition of "person" to allow the
5    Tribes to avoid liability that would attach to any other party on these facts.

6    **II.  WHEN LIBERALLY CONSTRUED, A TRIBE FITS COMFORTABLY**
7    **WITHIN SEVERAL TERMS IN THE DEFINITION OF "PERSON."**

8         CERCLA defines "person" to include several terms that are broad enough to
9    include the Tribes, including "municipality," "association," and "consortium."  There
10   are two principles of statutory interpretation which show that these terms include
11   Indian tribes.  The first is the doctrine of *in pari materia*, under which the meaning of
12   a term used in one statute may be understood by examining definitions of the same
13   term in other statutes.  *Erlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972).
14   The second is the principle that a statutory term should be construed "in accordance
15   with its ordinary or natural meaning," which may be determined by looking to
16   Black's Law Dictionary and other commonly used dictionaries.  *Federal Deposit Ins.*
17   *Corp. v. Meyer*, 510 U.S. 471, 476 (1994); *see United States v. Akintobi*, 159 F.3d
18   401, 403 (9th Cir. 1998).

19   **A.    In Pari Materia.**

20        CERCLA's use of the term "municipality" in the definition of "person" should
21   be read *in pari materia* with other environmental statutes.

22        The rule of in pari materia – like any canon of statutory construction –
     is a reflection of practical experience in the interpretation of statutes:
23        a legislative body generally uses a particular word with a consistent
     meaning in a given context. . . .  The Rule is but a logical extension of
24        the principle that individual sections of a single statute should be
     construed together, for it necessarily assumes that whenever Congress
25        passes a new statute, it acts aware of all previous statutes on the same
     subject. . . .
26

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

1   *Erlenbaugh*, 409 U.S. at 243-44.

2       The canon of *in pari materia* provides that similar statutes are to be interpreted

3   in a similar manner absent contrary legislative history or purpose. "It is assumed that

4   whenever the legislature enacts a provision it has in mind previous statutes relating to

5   the same subject matter. In the absence of any express repeal or amendment, the new

6   provision is presumed in accord with the legislative policy embodied in those prior

7   statutes. Thus, they all should be construed together." 2B J. Sutherland, *Statutes and*

8   *Statutory Construction*, § 51:2 (7th ed. 2009).

9       Courts have applied the principle of *in pari materia* to interpret CERCLA by

10  examining the meaning of terms in other environmental statutes. *Tanglewood East*

11  *Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1574 (5th Cir. 1988). *See,*

12  *also*, *United States v. Carr*, 880 F.2d 1550, 1553 (2d Cir. 1989), where the court said:

13  "Since CERCLA's use of the term 'in charge' was borrowed from section 311 of the

14  Clean Water Act, and the two sections share the same purpose, the parallel provisions

15  can, as a matter of general statutory construction, be interpreted to be *in pari*

16  *materia*." *And see*, *United States v. Shell Oil Co.*, 605 F. Supp. 1064, 1070 (D. Colo.

17  1985): "Additionally, CERCLA must be construed in light of previous statutes

18  relating to environmental pollution, notably the Resource Conservation and Recovery

19  Act of 1976 ("RCRA"), 42 U.S.C. §§ 6901 *et seq.*" *See, also*, *State of Colorado v.*

20  *U.S. Dept of the Army*, 707 F. Supp. 1562, 1569 (D. Colo. 1989): "Tenets of statutory

21  construction provide that whenever a legislative body enacts a statute, it has in mind

22  previous statutes relating to the same subject matter. The new provision is presumed

23  to be in accord with the legislative policy embodied in prior statutes and all statutes

24  should be construed together. 2A *Sutherland Statutory Construction* § 51.02 (Sands

25  4th ed.). As I emphasized in *Shell*, '... CERCLA must be construed in light of

26

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

1    previous statutes relating to environmental pollution . . .' and notably, that includes

2    RCRA. *Shell,* 605 F.Supp. at 1070."

3         Each of the environmental statutes mentioned in these cases pre-date the

4    passage of CERCLA. In each, and in the Safe Drinking Water Act ("SWDA"),

5    Congress defined the term "person" without expressly mentioning the term "tribes."[3]

6    But in each of these three statutes, as in CERCLA, the term "municipalities" is

7    expressly included within the definition of "person." While the term "municipality"

8    is not defined in CERCLA, it is defined in each of those three other environmental

9    statutes. Under the *in pari materia* doctrine, it is appropriate to look at the definitions

10   of "municipality" in these other environmental statutes.[4]

11        In each instance the term "municipality" includes "Indian tribes." In RCRA,

12   42 U.S.C. § 6903(13)(A), municipality is defined as: "[A] city, town, borough,

13   county, parish, district, or other public body created by or pursuant to State law, with

14   responsibility for the planning or administration of solid waste management, or an

15   **Indian tribe or authorized tribal organization** or Alaska Native village or

16   organization. . . ." (Emphasis added.)

17

18   _____

19   [3] 42 U.S.C. § 6903(15); 33 U.S.C. § 1362(5); 42 U.S.C. § 300f(12).

20   [4] In *Okruhlik v. University of Arkansas ex rel. May*, 255 F.3d 615, 623 (8th Cir.

21   2001), even though the 1991 Act amending the 1964 Civil Rights Act is a separate

22   statutory provision from Title VII, the court read the 1991 Act *in pari materia* with

23   Title VII to define "respondent" to include "state employers." "Although the 1991

24   amendments do not define 'respondent,' the definition of respondent in Title VII

25   includes state employers." The same should be done here to see that the term

26   "municipality" includes Indian tribes.

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                                  9

In the Clean Water Act ("CWA"), 33 U.S.C. § 1362(4), a municipality includes: "[A] city, town, borough, county, parish, district, association or other public body created by or pursuant to State law and having jurisdiction over disposal of sewage, industrial wastes, or other wastes, or an **Indian tribe or an authorized Indian tribal organization**, or a designated and approved management agency under section 1288 of this title."  (Emphasis added.)

In the Safe Drinking Water Act ("SWDA"), 42 U.S.C. § 300f(10), a municipality is defined as:  "[A] city, town or other public body created by or pursuant to State law, or an **Indian Tribe**."  (Emphasis added.)

Thus, applying the rule of *in pari materia*, the term "municipality" which is expressly included with the term "person" as defined in CERCLA, should be read to include Indian tribes.  As the court said in *Tanglewood*, *supra*, "Appellant argues that since the relevant statutory definitions in § 6972 [RCRA] are the same as the definitions in CERCLA, the same result should obtain.  We agree. . . ."

**B.**   **Common Usage of Other Terms in CERCLA's Definition of "Person" Includes Tribes.**

A statutory term should be construed "in accordance with its ordinary or natural meaning," which may be determined by looking to Black's Law Dictionary and other commonly used dictionaries.  *Federal Deposit Ins. Corp.*, 510 U.S. at 476; *Akintobi*, 159 F.3d at 403.  Beyond the term "municipality," at least two of the other terms used in CERCLA's definition of "person" are broad enough to include tribes.

"Association" is commonly defined as:  "2. A gathering of people for a common purpose; the persons so joined.  3. An incorporated organization that is not a legal entity separate from the persons who compose it. . . .  If an association has sufficient corporate attributes, such as centralized management, continuity of existence, and limited liability, it may also be classified and taxed as a corporation."

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

1   Black's Law Dictionary 132 (8th ed. 2004).  Merriam-Webster defines this term as

2   "an organization of persons having a common interest: society."  Merriam-Webster

3   Online, at http://www.merriam-webster.com/dictionary/association (last viewed on

4   January 19, 2009).  It certainly does not stretch the language to characterize a tribe as

5   a gathering of people for a common purpose.  It is an organization of persons having

6   a common interest and it is a society. It fits the definition of an association.

7       "Consortium" is defined as: "1. an agreement, combination, or group (as of

8   companies) formed to undertake an enterprise beyond the resources of any one

9   member; 2. association, society."  Merriam-Webster Online, found at

10  http://www.merriam-webster.com/dictionary/consortium, (last viewed on January 19,

11  2009).  It is reasonable to characterize a tribe as a combination or group formed in

12  order to undertake an enterprise beyond the resources of any one member.  The

13  Tribes is an association and society, and fits the definition of consortium.

14      Since tribes fit the definitions of several terms included in the CERCLA

15  definition of "person," a liberal construction of the term "person" requires the Court

16  to find that the Tribes fits within the broad statutory reach of CERCLA.

### III.   NO *CHEVRON* DEFERENCE SHOULD BE GIVEN TO EPA'S PURPORTED POSITION.

19      The Tribes ask for "*Chevron* deference" to statements in two documents

20  purporting to establish that the EPA interprets CERCLA to exclude Indian tribes from

21  the definition of "person."  The first is a "policy document" dealing with EPA's

22  Brownfields loan and grant programs.  It provides no analysis to support or explain

23  its conclusory mention of potential liability of Indian tribes.  The second is a 1992

24  letter from one of the ten regional administrators at EPA, stating that the region

25  "decided" not to pursue a tribe for CERCLA liability at a site, but may pursue a tribal

26  corporation.  That document does not explain the reasoning of  EPA regional staff

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS            11

for that decision.  These two tangential documents, culled from 27 years of implementation of CERCLA, hardly present a thorough or persuasive agency analysis of the legal question of whether Congress intended to exclude several hundred tribes with jurisdiction over thousands of square miles of territory and hundreds of thousands of residents from the all-encompassing liability structure of CERCLA.  There is no indication of the agency's analysis, or the validity of the position taken, in either of these two documents.

More importantly, neither of these two documents constitutes EPA's formal "Indian Policy," a document available online which the Tribes did not mention.  That EPA document, which is attached to the Affidavit of Jason Van Loo, does not state that Indian tribes are excluded from CERCLA's term "person."  To the contrary, it states that EPA will consider judicial action against tribes where necessary.  And it says nothing to indicate a belief by EPA that private actions against tribes are precluded.  Specifically, EPA's formal Indian Policy says:

> [T]he fundamental objective of the Environmental Protection Agency is to protect human health and the environment.  The keynote of this effort will be to give special consideration to Tribal interests in making Agency policy, and to insure the close involvement of Tribal Governments in making decisions and managing environmental programs affecting reservation lands.  To meet this objective, the Agency will pursue the following principles:
>
> * * * * * * *
>
> 8.  THE AGENCY WILL STRIVE TO ASSURE COMPLIANCE WITH ENVIRONMENTAL STATUTES AND REGULATIONS ON INDIAN RESERVATIONS.
> In those cases where facilities owned or managed by Tribal Governments are not in compliance with Federal environmental statutes, EPA will work cooperatively with Tribal leadership to develop means to achieve compliance . . . . Because of the distinct status of Indian Tribes and the complex legal issues involved, direct EPA action through the judicial or administrative process will be considered where the Agency determines, in its judgment, that: (i) a significant threat to human health or the environment exists. . . .

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

1    Thus, far from ruling out the liability of Indian tribes under CERCLA, EPA's

2    formal policy is to ensure compliance with environmental statutes, such as CERCLA,

3    on tribal lands, and take judicial action when necessary.

4    Since the Tribes opened the issue of EPA's view, Teck Cominco was obliged

5    to correct the omission of EPA's formal policy. But EPA's policy in any event is not

6    determinative of the legal issue before this Court. Even if the Court considers the two

7    documents proffered by the Tribes,[5] they certainly do not qualify for deference under

8    *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837

9    (1984). The Supreme Court explained the scope and limits of the *Chevron* deference

10   doctrine in *U.S. v. Mead Corp.*, 533 U.S. 218, 226-227 (2001):

11   > We hold that administrative implementation of a particular statutory
12   > provision qualifies for *Chevron* deference when it appears that
     > Congress delegated authority to the agency generally to make rules
13   > carrying the force of law, and that the agency interpretation claiming
     > deference was promulgated in the exercise of that authority.
     > Delegation of such authority may be shown in a variety of ways, as by
14   > an agency's power to engage in adjudication or notice-and-comment
     > rulemaking, or by some other indication of a comparable
15   > congressional intent."

16   The Supreme Court also pointed out that while "the overwhelming number of

17   cases applying *Chevron* deference have reviewed the fruits of notice-and-comment

18   rulemaking or formal adjudication" (id. at 231), *Chevron* deference could be applied

19   in other situations in which Congress thought the agency actions were "deserving the

20   deference claimed for them here." Id. at 230. The Court held that Customs rulings

21   letters did not meet this requirement, and noted that interpretative rulings by the

22   Internal Revenue Service received no such deference either. Id. at 226.

23   _____

24   [5] The Court should not do so; *see* Teck Cominco's Objections to Judicial Notice. But

25   if the Court takes judicial notice of the two documents proffered by the Tribes, it

26   should certainly do the same as to EPA's formal policy.

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                               13

1   The Tribes have not shown that the EPA grant and loan policy document or the

2   letter to another tribe were the fruits of notice and comment rulemaking or an

3   adjudicatory proceeding.  Nor have they shown that Congress intended the courts to

4   defer to such informal documents. *Chevron* deference does not apply.

5   While the Tribes did not raise this point, Teck Cominco feels that it should

6   point out that the Court in *Mead* did state that where *Chevron* did not apply, under

7   *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), an agency interpretation still may be

8   entitled to "a spectrum of judicial responses, from great deference at one end . . . to

9   near indifference at the other."  *Mead, 533 U.S.* at 228 (citations omitted).  The Court

10  explained:

11      The fair measure of deference to an agency administering its own
        statute has been understood to vary with circumstances, and courts
12      have looked to the degree of the agency's care, its consistency,
        formality, and relative expertness, and to the persuasiveness of the
13      agency's position. . . .  The approach has produced a spectrum of
        judicial responses, from great respect at one end . . . to near
14      indifference at the other. . . .  Justice Jackson summed things up in
        *Skidmore v. Swift & Co.*:

15
        "The weight [accorded to an administrative] judgment in a particular
16      case will depend upon the thoroughness evident in its consideration,
        the validity of its reasoning, its consistency with earlier and later
17      pronouncements, and all those factors which give it power to persuade,
        if lacking power to control."  323 U.S., at 140, [65 S. Ct. 161].
18

19  *Mead*, 533 U.S. at 228 (footnotes and citations omitted).

20  Under these standards, no deference is appropriate to the two documents

21  proffered by the Tribes.  They are conclusory statements offered in informal

22  documents with no showing by plaintiff of agency "care, consistency [or] formality."

23  The two documents do not set out their rationale, so there is no showing of the

24  "persuasiveness of the agency's position."

25  Moreover, plaintiff supplied this Court with no showing of any "thoroughness

26  evident in its consideration, the validity of its reasoning, its consistency with earlier

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                    14

1    and later pronouncements, and all those factors which give it power to persuade."

2    Neither of these two proffered documents suggests that they were prepared by the

3    agency "with a lawmaking pretense in mind." Id. at 233. Both documents are bare of

4    analysis, and neither purports to represent formal determinations by EPA on the issue

5    of Tribes as "persons" under CERCLA. Nothing in either of the two documents

6    shows any "degree of care" or "thoroughness' or "formality" in its conclusions.

7    These two such perfunctory documents are hardly adequate to establish a "consistent"

8    agency determination regarding whether Indian tribes fall within the definition of

9    "person." The Tribes' interpretation of these two documents is inconsistent with the

10    inclusion of tribes within that term in three other environmental statutes enforced by

11    the same agency, and is inconsistent with over two decades of judicial recognition of

12    the expansive coverage of CERCLA. The documents offered by the Tribes are

13    entitled to little, if any deference.

14        Additionally, in contrast to the Tribes' characterization, while no court has

15    directly reached the issue, at least two courts, including the Supreme Court, have

16    implied that Indian tribes are "persons" under CERCLA. Interpreting the provisions

17    of 42 U.S.C. § 9607(a), the Supreme Court stated:

18        . . . Atlantic Research believes that subparagraph (B) provides a cause
    of action to anyone except the United States, a State, or an Indian tribe
19    – **the persons listed in subparagraph (A)**. We agree with Atlantic
    Research.

20        . . . [T]he language of subparagraph (B) can be understood only with
21    reference to subparagraph (A). . . .

22        In light of the relationship between the subparagraph, it is natural to
    read the phrase "any other person" by referring to the immediately
23    preceding subparagraph (A), which permits suit only by the United
    States, a State, or an Indian tribe. The phrase "any other person"
24    therefore means **any person other than those three**.

25    *United States v. Atlantic Research Corp.*, *supra*, 127 S.Ct. 2331, 2336

26    (2007)(emphasis added). The Supreme Court added that "The phrase 'any other

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

1    person' performs a significant function simply by clarifying that subparagraph (B)

2    excludes the **persons** listed in subparagraph (A)." Id. at 2337 (emphasis added).

3         And a federal district court has said: "The issue for my determination here is

4    whether a governmental PRP (the United States Government or a State or an **Indian**

5    **tribe**) may bring a cost recovery action against **another** PRP under section 107(a) of

6    CERCLA. . . ." *United States v. Friedland*, 152 F. Supp. 2d 1234, 1247 (D. Colo.

7    2001)(emphasis added), implying that this court considered an Indian tribe to be a

8    potentially responsible party or "PRP" (and therefore a "person") under CERCLA.

9    ## IV.  "INDIAN LAW CANONS OF CONSTRUCTION"

10   ## DO NOT EXEMPT THE TRIBES FROM STATUTES OF

11   ## GENERAL APPLICATION SUCH AS CERCLA.

12        The Tribes urges this Court to apply to CERCLA a purported canon of

13   statutory construction providing that "[S]tatutes are to be construed liberally in favor

14   of the Indians, with ambiguous provisions interpreted to their benefit." Tribes'

15   Memorandum at 12. The Tribes misstates this principle. The Ninth Circuit has held

16   that this canon is guidance only for construing agreements, treaties and laws that were

17   made for the benefit of "dependant Indian tribes," not laws of general applicability

18   such as CERCLA. It "applies **only** to federal statutes that are 'passed for the benefit

19   of dependant Indian tribes.'" *Artichoke Joe's California Grand Casino v. Norton*,

20   353 F.3d 712, 729 (9th Cir. 2003) (emphasis added). Thus, in a case involving the

21   interpretation of the Alaska National Interest Lands Conservation Act, where the

22   Ninth Circuit found that such Act was one of applicability to all rural substance users,

23   regardless of whether they are members of tribes, it held this canon would not be

24   applicable, and ruled against the tribe. *Hoonah Indian Ass'n v. Morrison*, 170 F.3d

25   1223, 1229 (9th Cir. 1999).

26

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                    16

1    The Tribes cannot credibly argue against the proposition that CERCLA is a

2    statute of general applicability, not a statute that was passed for the benefit of Indian

3    tribes.  As with other statutes of general applicability, CERCLA has a broad remedial

4    purpose, is comprehensive (in coverage as well as in name) and its exemptions are

5    limited.  *See, Nat'l Labor Relations Bd. v. Chapa De Indian Health Program, Inc.*,

6    316 F.3d 995, 998 (9th Cir. 2003)(holding National Labor Relations Act to be of

7    general applicability); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1115

8    (9th Cir. 1985)(holding the Occupational Safety and Health Act to be of general

9    applicability).

10    Even if this canon could be applied here, it would not be conclusive.  "Canons

11    of construction need not be conclusive and are often countered, of course, by some

12    maxim pointing in a different direction."  *Circuit City Stores, Inc. v. Adams*, 532 U.S.

13    105, 115 (2001).  In a case involving a statute that was passed for the benefit of

14    Indian tribes, the Indian Gaming Regulatory Act, the Supreme Court declined to

15    apply this canon:

16    > Nonetheless, these canons do not determine how to read this statute. . . .
17    > They are designed to help judges determine the Legislature's intent as
      > embodied in particular statutory language.  And other circumstances
      > evidencing congressional intent can overcome their force.  In this
18    > instance, to accept as conclusive the canons on which the Tribes rely
      > would produce an interpretation that we conclude would conflict with
19    > the intent embodied in the statute Congress wrote.

20    *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). "[A] canon of

21    construction is not a license to disregard clear expressions of . . . congressional

22    intent." *Andrus v. Glover Const. Co.*, 446 U.S. 608, 619 (1980) (quoting *DeCoteau v.*

23    *District County Court for the Tenth Judicial District*, 420 U.S. 425, 447 (1975).

24    Thus, in the case cited by the Tribes to support its argument, the Supreme

25    Court actually rejected the argument of a tribe and interpreted the law to allow a state

26

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                17

1  to tax lands owned by the tribe.[6]  Quoting *Goudy v. Meath*, 203 U.S. 146, 149, 27 S.

2  Ct. 48, 50 (1906), the Supreme Court noted that:

> [T]he *Goudy* Court said that, although it was certainly possible for Congress to "grant the power of voluntary sale, while withholding the land from taxation or forced alienation," such an intent would not be presumed unless it was "clearly manifested." *Ibid.*  For "it would seem strange to withdraw [the] protection [of the restriction on alienation] and permit the Indian to dispose of his lands as he pleases, while at the same time releasing it [*sic*] from taxation." *Ibid.*

*County of Yakima*, 502 U.S. at 263.  Accordingly, the Supreme Court refused to apply the canon of construction and rejected the "strange interpretation of the statute" offered by the tribe.

Similarly, here, it would "seem strange" for Congress to establish a comprehensive system for cleanup of contaminated sites, with the purpose of having all those who contributed to the contamination - including without exception all local, state and federal governmental bodies - pay the costs thereof, and at the same time release such a broad group from any such liability.  As in *County of Yakima* and *Goudy*, the invocation of this canon does not support such a result in the absence of an express showing that Congress intended that result.  The Tribes cited no such legislative history.

In fact, "[f]ederal laws of general applicability are presumed to apply with equal force to Indians." *United States v. Baker*, 63 F.3d 1478, 1484 (9th Cir. 1995) (holding Contraband Cigarette Trafficking Act to be generally applicable).  The Ninth Circuit has noted only three exceptions to this presumption: "(1) the law touches 'exclusive rights of self-governance in purely intramural matters;' (2) the application

---

[6] In *County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation*, 502 U.S. 251, 263 (1992), the county was seeking to tax tribal land, and the tribe was resisting the taxation, saying that federal law prohibited such taxes.

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS      18

1   of the law to the tribe would 'abrogate rights guaranteed by Indian treaties;' or

2   (3) there is proof 'by legislative history or some other means that Congress intended

3   [the law] not to apply to Indians on their reservations." *Id.* at 1485; *Lumber Industry*

4   *Pension Fund v. Warm Springs Forest Products Industries*, 939 F.2d 683, 685 (9th

5   Cir. 1991) (holding Employee Retirement Income Security Act to be generally

6   applicable). The first two potential exceptions do not apply to CERCLA, and the

7   Tribes has pointed to nothing in the legislative history of CERCLA to show that

8   Congress intended that Indian tribes, unlike every other unit of government, were to

9   be excluded from the liability net of CERCLA.

10       The Tribes also asks the Court to apply the canon of *expressio unius est*

11   *exclusion alterius*, citing *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078

12   (9th Cir. 2007). However, in *Webb* the court did not stop its analysis with the

13   application of the canon, nor did the court consider the canon conclusive: "Plain

14   meaning is not the end of the inquiry. 'The plain language of a regulation . . . will not

15   control if clearly expressed administrative intent is to the contrary or if such plain

16   meaning would lead to absurd results.'" *Webb*, 499 F.3d at 1085 (*quoting Safe Air*

17   *for Everyone v. United States Environmental Protection Agency*, 488 F.3d 1088, 1097

18   (9th Cir. 2007).

19       As noted above, CERCLA is notorious for lacking precision and clarity.

20   Trying to apply the *expressio unius* canon here would lead to a result inconsistent

21   with the purposes of the statute, which are clear and unambiguous. The intent of

22   Congress in passing CERCLA was: "(1) to ensure the prompt and effective cleanup

23   of waste disposal sites, and (2) to assure that parties responsible for hazardous

24   substances bore the cost of remedying the conditions they created." *Carson Harbor*,

25   270 F.3d at 880. To say that either canon of construction urged by the Tribes should

26   be used to hold that Indian tribes are exempt from such liability is to ask the Court to

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                                    19

1    "disregard clear expressions of Congressional intent."  These canons of construction

2    cannot be applied to circumvent the purpose of CERCLA.

3                              **V.    <u>CONCLUSION</u>**

4         Based on all of the foregoing, the Court should deny the Tribes' motion.

5         DATED this 6th day of February 2009.

6                                        LUKINS & ANNIS, P.S.

7

8                                        By   s/Eugene I. Annis
                                            _____
9                                            EUGENE I. ANNIS, WSBA# 2112
                                             Attorneys for Defendant
10                                           Teck Cominco Metals Ltd.
                                             Lukins & Annis, P.S.
11                                           1600 Washington Trust Financial Center
                                             717 W. Sprague Avenue
12                                           Spokane, WA  99201-0466
                                             Telephone:  (509)-455-9555
13                                           Fax:  (509) 363-2461
                                             Email:  gannis@lukins.com
14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                        20

1 | *Additional Counsel:*

2 | MARK E. ELLIOTT, *Pro Hac Vice*
PILLSBURY WINTHROP SHAW PITTMAN LLP
3 | 725 South Figueroa Street, Suite 2800
Los Angeles, CA 90017-5406
4 | (213) 488-7100

5 | THOMAS A. CAMPBELL, *Pro Hac Vice*
RODNEY JACK REYNOLDS, *Pro Hac Vice*
6 | PILLSBURY WINTHROP SHAW PITTMAN LLP
909 Fannin, Suite 2000
7 | Houston, TX 77010
(713) 276-7600

8 |
GERALD F. GEORGE, *Pro Hac Vice*
9 | PILLSBURY WINTHROP SHAW PITTMAN LLP
50 Fremont Street
10 | Post Office Box 7880
San Francisco, CA 94120-7880
11 | (415) 983-1000

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA 99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS                    i

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of February 2009, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Thomas A. Campbell | tom.campbell@pillsburylaw.com |
| Kristie E. Carevich | kristiec@atg.wa.gov |
| Paul J. Dayton | pdayton@scblaw.com |
| Richard A. DuBey | rdubey@scblaw.com |
| Leslie C. Clark | lclark@scblaw.com |
| Loren R. Dunn | ldunn@riddellwilliams.com |
| Michael L. Dunning | michaeld@atg.wa.gov |
| Mark E. Elliott | mark.elliott@pillsburylaw.com |
| Gerald F. George | gerald.george@pillsburylaw.com |
| Christopher J. McNevin | chrismcnevin@pillsburylaw.com |
| R. Jack Reynolds | jack.reynolds@pillsburylaw.com |
| Christa L Thompson | christat@atg.wa.gov |

Notice has been delivered by other means to:

n/a

By   s/Eugene I. Annis
  EUGENE I. ANNIS, WSBA# 2112
  Attorneys for Defendant
  Teck Cominco Metals Ltd.
  Lukins & Annis, P.S.
  1600 Washington Trust Financial Center
  717 W. Sprague Avenue
  Spokane, WA  99201-0466
  Telephone: (509)-455-9555
  Fax:  (509) 363-2461
  Email:  gannis@lukins.com

LAW OFFICES
**LUKINS & ANNIS**
A PROFESSIONAL SERVICE CORPORATION
1600 WASHINGTON TRUST FINANCIAL CENTER
717 W SPRAGUE AVE.
SPOKANE, WA  99201-0466
(509) 455-9555

RESPONSE TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS   ii