UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH A. PAKOOTAS, an individual and enrolled member of the Confederated Tribes of the Colville Reservation; and DONALD R. MICHEL, an individual and enrolled member of the Confederated Tribes of the Colville Reservation, and THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION,<br><br>Plaintiffs,<br><br>and<br><br>THE STATE OF WASHINGTON,<br><br>Plaintiff-Intervenor,<br><br>vs.<br><br>TECK COMINCO METALS, LTD., a Canadian corporation,<br><br>Defendant. | No. CV-04-256-LRS<br><br>**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION** |

**BEFORE THE COURT** is the Defendant's Motion For Clarification And Reconsideration Of Order Denying Summary Adjudication Of The State Of

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 1**

Washington's CERCLA Liability, *Inter Alia* (ECF No. 1305). The motion is heard without oral argument.

In addition to denying Defendant's Motion For Summary Adjudication Of The State Of Washington's CERCLA Liability, the court's order filed November 29, 2011 (ECF No. 1303), awarded judgment to the State on Defendant's CERCLA counterclaim with regard to the Josephine Mine and Mill. The court stated:

> It is not apparent there are any disputed issues of material fact with regard to the mining contracts and how they were performed, and hence no factual issues left to be adjudicated at trial regarding the State's alleged CERCLA liability as an arranger for any releases at the Josephine Mine and Mill. The State did not file a cross-motion for summary judgment, but such a motion is unnecessary if there are no factual issues, the opposing non-moving party is entitled to judgment as a matter of law, and the moving party had notice and an adequate opportunity to address the issues. In such a case, it is appropriate to enter summary judgment for the non-moving party. *Cool Fuel, Inc v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982). Defendant had an opportunity in both its reply brief and in its presentation at oral argument to explain if there are any disputed issues of material fact regarding the State's alleged liability as an arranger. Defendant did not do so. Instead, it argued that based on the undisputed facts relating to the Josephine mining contracts and execution of the same, the State should be found liable as an arranger as a matter of law.

(ECF No. 1303 at pp. 24-25).

In arriving at its rulings, the court reviewed and considered the respective Statements of Facts filed by the parties, including accompanying responses and objections. (ECF Nos. 923, 1142 and 1241). Nothing contained therein led the court to believe there was any genuine issue of material fact as to whether the State could be classified as an "arranger" with respect to the Josephine Mine and Mill. Because the court found the State could not be classified as an "arranger," it was unnecessary to consider the other three elements of liability for cost recovery under CERCLA (site on which the hazardous substances are contained is a

**ORDER RE MOTION FOR**
**CLARIFICATION AND RECONSIDERATION- 2**

"facility;" there has been a "release" or "threatened release" of any "hazardous substance" from the facility; such "release" or "threatened release" has caused incurrence of response costs that were "necessary" and "consistent" with the national contingency plan).

In conjunction with its consideration of Defendant's "Motion For Clarification And Reconsideration," the court has once again reviewed the parties' Statements Of Fact and the accompanying responses and objections, and concludes it did not clearly err in finding as a matter of law that the State is not an "arranger" with regard to the Josephine Mine and Mill. Furthermore, this ruling is not manifestly unjust.[1] There are no disputed issues of material fact precluding this ruling.

In its order, the court did not mention Mr. Raymond Lasmanis or his Declaration (ECF No. 1143), in particular Paragraphs 17 and 18 of his Declaration which the State cited in support of its "Fact No. 1" and "Fact No. 2." (ECF No. 1142). This is because the court did not rely on the statements of Mr. Lasmanis to arrive at its conclusions about the nature of the ore deposits on State lands and the State's intent in light of the mining contracts at issue. Rather, the court relied on the plain terms of the mining contracts and the undisputed facts about what, in general, occurred with and to the ore after it was extracted from State land (creation of waste rock from extraction and treatment of the ore which created

---

[1] A Fed. R. Civ. P. 59(e) motion for reconsideration can only be granted when a district court: (1) is presented with newly discovered evidence; or (2) committed clear error or the initial decision was manifestly unjust; or (3) there has been an intervening change in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003).

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 3**

tailings).[2]  The court concluded that "[n]aturally occurring in-ground ore deposits did not have the 'characteristic of waste' at the time they were 'delivered' by the State to the mining companies" and "[t]he fact the ore deposits were not hazardous waste when the State entered into the contracts with the mining companies indicates the purpose of those contracts- the intent of the State- was not to dispose of or treat hazardous waste."  (ECF No. 1303 at pp. 22-23).

In Paragraph 17 of his declaration, Lasmanis states:

> The minerals on state lands resulted from millions of years of geological processes.  In their natural condition, the reality is that the minerals in the ground have no significance other they are part of the physical natural world.  The State would not consider such naturally occurring minerals to be a waste product.

Defendant's response was that it did not dispute "the hazardous metals at issue in this case . . . are the result of millions of years of geological processes," but it did dispute the State's "assertion of the legal insignificance of these 'naturally occurring minerals' because "CERCLA defines them to be hazardous substances."  (ECF No. 1241 at pp. 46-47).

Certainly, the metals are "hazardous substances," but that does not make them "waste," nor does it make the ore deposits in which they are contained, "waste."  With that in mind, the court construed the State's intent from the terms of the mining contracts and determined said intent was "not to dispose of or treat hazardous waste," but "simply to generate revenue for the State."  (ECF No. 1303

---

[2]  Hence, the "Background" section of the court's Order was limited to quoting the relevant portion of the mining contracts and quoting what Defendant contended revealed about the State's intent because of the fact "waste in the form of tailings and waste rock is inherent to the mining and milling processes."

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 4**

at p. 23).³ This court "look[ed] beyond the parties' characterization of the transaction as a 'disposal' or 'sale'" and sought "to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions." *Burlington Northern And Santa Fe Railway Company v. United States* (*BNSF*), 556 U.S. 599, 129 S.Ct. 1870, 1878-79 (2009).

Defendant asserts that "application of the useful product defense is one example of error resulting from the Court's failure to issue evidentiary rulings." The "useful product defense 'applies when the sale is of a new product, manufactured specifically for the purpose of sale, or of a product that remains useful for its normal purpose in its existing state." *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 581 (N.D. Cal. 1993). Citing page 4 of the November 29, 2011 order (ECF No. 1303), Defendant contends this court "assumed" that naturally occurring minerals are a "new and useful" product and this ruling "appears to turn on at least two factual determinations not supported by admissible evidence in the record: (1) that minerals from State lands were useful products in their natural state, and (2) the State sold ore to the mining companies."

This court's finding that naturally occurring in-ground ore deposits did not have the "characteristic of waste" does not depend on application of the useful product defense. It was this court's intention to analogize to the useful product defense for the purpose of ascertaining the State's intent with regard to its mining contracts because "[t]he useful product doctrine serves as a convenient proxy for the intent element" of arranger liability. *Team Enterprises, LLC v. Western*

---

³ The construction of a contract is a question of law and is the process by which the court determines the legal consequences that follow from a contract term. *Berg v. Hudesman*, 115 Wn.2d 657, 668, 801 P.2d 222 (1990).

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 5**

*Investment Real Estate Trust*, 647 F.3d 901, 908 (9th Cir. 2011).  Initially, the court concluded the circumstances presented to it did not fall into either of the extreme cases referenced by the Supreme Court in *BNSF*, one of which is "that an entity could not be held liable as an arranger merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." 129 S.Ct. at 1878.  Thus, "**[a]ssuming** naturally occurring ore deposits constitute a 'new and useful product,' it was not 'unbeknownst' to the State that the entities with which it contracted would excavate and treat the ore in a fashion that would create waste which would require disposal." (ECF No. 1303 at p. 4)(emphasis added).  This court spent considerable time discussing the Ninth Circuit's decision in *Team Enterprises* because it confirms the Supreme Court's holding in *BNSF* that "[d]isposal and/or treatment of hazardous waste cannot be merely 'foreseeable[,]' [but] must be a specific purpose of the transaction." (*Id*. at p. 8).

In its November 29, 2011 order, the court specifically took note of Defendant's argument that "[u]nlike *Team*, the State did not manufacture or sell a machine that generated hazardous waste as part of its operation" and that "[u]nlike that vapor recovery machine, the ore extracted from State lands was not useful in its existing state- it had to be treated to create another waste stream, tailings, which also were disposed of, and only then was the product of the treatment- the concentrates- sold for profit." (ECF No. 1303 at p. 9).  The court's response was that "[t]he machine at issue in *Team* was not 'useful in its existing state" because "[i]n order to be 'useful,' it had to be used for its intended purpose[,] [and] [s]o used, it produced wastewater containing PCB which was poured down the sewer drain." (*Id*.).  Although the production and disposal of waste was inherent in the use of the machine, the Ninth Circuit found there could not be "arranger liability."

**ORDER RE MOTION FOR**
**CLARIFICATION AND RECONSIDERATION- 6**

(*Id.*). This court found the same was true of the naturally occurring in-ground ore deposits on State land in that inherent in accessing the minerals within the ore deposits is excavation of the deposits and then treatment of the excavated ore, both of which generate waste which requires disposal. (*Id.* at p. 10).

In sum, this court acknowledged that naturally occurring in-ground ore deposits are not "useful in their existing state," but concluded it does not matter because the ore deposits do not have the "characteristic of waste."[4] It is necessary to extract and treat the ore to gain access to the minerals. The mining companies performed this extraction and treatment. In doing so, it was foreseeable that waste would be created. Nevertheless, the State "at most was indifferent to whatever disposal method was chosen by the mining companies." (ECF No. 1303 at p. 10).

There is no doubt an ore deposit is not a manufactured product like the machine in *Team Enterprises*. It is possible the Ninth Circuit may disagree with this court's characterization of the machine in *Team Enterprises* as not being "useful in its existing state," but the point this court was trying to make is that with regard to the contracts the State entered into with the mining companies, it did not intend to dispose of or treat hazardous waste, notwithstanding it being foreseeable that waste would result from the extraction and treatment of the ore once it was severed from the land. The court also fully realizes the ore deposits were not

---

[4] The court acknowledged that "[n]aturally occurring ore deposits on State lands which have not been mined have yet to be 'used.'" (ECF No. 1303 at p. 4). The court added that the deposits "remain 'useful,'" but this was intended in the sense of potential usefulness because of minerals contained in the ore. The essential point, however, is that in not having yet been "used," the ore deposits do not constitute "hazardous waste."

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 7**

"sold" by the State to the mining companies, like a machine is sold.  Instead, the State leased its land to the mining companies for the purpose of "exploring for and mining and taking out and removing therefrom the ore therein contained . . . ." (ECF No. 1303 at p. 2).  This too, however, does not alter the court's conclusion that the naturally occurring in-ground ore deposits did not have the "characteristic of the waste" prior to their extraction by the mining companies and that the State did not intend the disposal or treatment of hazardous waste by virtue of its contracts with the mining companies.

Even if not "useful in [their] existing state," and only potentially "useful" prior to extraction and treatment, naturally occurring in-ground ore deposits are not "waste."  Defendant contends the in-ground ore deposits "consisted almost entirely of waste," noting that "materials extracted from State lands . . . included significant volumes of waste rock," that "even after the waste rock was disposed of, the remaining extracted minerals consisted of approximately 93% waste . . . and prior to any of the extracted materials being 'useful,' they had to be treated." That, however, is precisely the point: it was only **after** the ore was extracted by the mining companies and processed that "waste" was created (waste rock created by extraction and tailings from treatment of the ore separated from the waste rock). The State did not extract the ore.  Furthermore, as the court explained in its order, the State did not own or possess the extracted (severed) ore and did not maintain actual or constructive control over mining operations.  The State maintained a contractual right to receive a royalty which was a specified percentage of sums received from the sale of minerals after deducting the cost of transportation and treatment.  This was the only logical and rational way for the State to be properly compensated.  Looking beyond the State's and Defendant's characterizations of the mining contracts, this court concluded the State was not seeking to dispose of

**ORDER RE MOTION FOR**
**CLARIFICATION AND RECONSIDERATION- 8**

hazardous waste- including waste rock- through those contracts.

This court does not read the Supreme Court's decision in *BNSF* as making the "specific purpose" test for arranger liability hinge exclusively on application of the useful product defense. Once again, based on the language of the mining contracts and certain undisputed facts discussed above, the court concluded the State's contractual intent was not to dispose of hazardous waste "by one or more of the methods described in [42 U.S.C]. §6903(3), that being "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water . . . ."

Defendant's Motion For Clarification And Reconsideration (ECF No. 1305) is **GRANTED** in part and **DENIED** in part. It is granted to the extent the court had clarified its ruling as set forth above. It is denied insofar as it seeks a reversal of that ruling. Appended hereto are the court's ruling on Defendant's evidentiary objections to the State's Statement of Facts as set forth in ECF No. 1241, although for the reasons given, the court does not believe it is necessary,

**IT IS SO ORDERED.** The District Court Executive shall forward copies of this order to counsel of record.

**DATED** this ___3rd___ day of February, 2012.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 9**

# APPENDIX

State's Fact No. 1: Defendant does not dispute that "minerals on state lands resulted from millions of years of geologic processes" The balance of Fact No. 1 was not considered by the court and therefore, Defendant's objection is MOOT.

State's Fact No. 2: Fact No. 2 was not considered by the court and therefore, Defendant's objection is MOOT.

State's Fact No. 4: Fact No. 4 was not considered by the court and therefore, Defendant's objection is MOOT.

State's Fact No. 5: Defendant does not dispute that the State entered into the mining contracts for profit. That is apparent from the plain language of the contracts and therefore, Defendant's objection to Fact No. 5 as being "an impermissible self-serving statement, lacking in foundation, and an improper expert opinion," is MOOT.

State's Fact No. 6: Defendant's objection is MOOT because the court relied on the plain language of the contracts in determining to what extent the State retained actual control or authority to control mining operations.

State's Fact No. 7: Defendant's objection is MOOT as the purported fact is immaterial to the court's rulings.

State's Fact No. 8: Defendant's objection is MOOT because the court relied on the plain language of the contracts in determining to what extent the State retained actual control or authority to control mining operations.

State's Fact Nos. 10-19: Defendant's objections are MOOT because these purported facts are immaterial in that they pertain to liability issues other than whether the State is an arranger or they pertain to mines other than the Josephine.

State's Fact Nos. 20-21: These facts are undisputed. Nevertheless, Defendant's objections are SUSTAINED on relevancy grounds. The court acknowledged in its order that arranger liability is not dependent on a defendant owning property where disposal or treatment occurred. (ECF No. 1303 at pp. 18-19, fn. 8).

State's Fact No. 25: Defendant's objection is MOOT as the purported fact is immaterial to the court's rulings.

State's Fact No. 30: Defendant's objection is MOOT as the purported fact is immaterial to the court's rulings.

**ORDER RE MOTION FOR CLARIFICATION AND RECONSIDERATION- 10**