1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7  JOSEPH A. PAKOOTAS, an
   individual and enrolled                    )
8  member of the Confederated                 )   No. CV-04-256-LRS
   Tribes of the Colville                     )
9  Reservation; and DONALD                    )   **ORDER DENYING MOTION**
   R. MICHEL, an individual                   )   **FOR RECONSIDERATION,**
10 and enrolled member of the                 )   ***INTER ALIA***
   Confederated Tribes of the                 )
11 Colville Reservation, and THE              )
   CONFEDERATED TRIBES OF                     )
12 THE COLVILLE RESERVATION,                  )
                                              )
13          Plaintiffs,                       )
                                              )
14 and                                        )
                                              )
15 THE STATE OF WASHINGTON,                   )
                                              )
16          Plaintiff-Intervenor,             )
                                              )
17                                            )
            vs.                               )
18                                            )
   TECK COMINCO METALS, LTD.,                 )
19 a Canadian corporation,                    )
                                              )
20          Defendant.                        )
   _____        )

21

22          **BEFORE THE COURT** are Defendant's Motion For Reconsideration Of

23 Order Denying Motion To Strike Or Dismiss (ECF No. 2118), and Defendant's

24 Motion To Modify Phase II Schedule Regarding Aerial Emission Allegations

   (ECF No. 2119).  Telephonic argument was heard on December 16, 2014.

25 ///

26

27 **ORDER DENYING MOTION**

28 **FOR RECONSIDERATION-         1**

Defendant asks the court to reconsider its order which declined to strike or dismiss Plaintiffs' allegations concerning aerial emissions as a basis for recovery of response costs and natural resource damages. (See "Order Denying Motion To Strike Or Dismiss" at ECF No. 2115). Defendant asks for reconsideration on the basis of the Ninth Circuit's August 20, 2014 decision in *Center For Community Action and Environmental Justice v. BNSF Railway Company*, 764 F.3d 1019 (2014) ("*CCAEJ*"). On October 20, 2014, the Ninth Circuit denied a petition for rehearing en banc and its mandate issued on October 30.

## I. DISCUSSION

*CCAEJ* is a Resource Conservation and Recovery Act (RCRA) case, 42 U.S.C. §§ 6901-6992k. It is not a Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) case, 42 U.S.C. §9601 *et seq.*, and makes no mention of CERCLA. That said, CERCLA borrows RCRA's definition of "disposal" which is as follows:

> [T]he discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste **into or on any land or water** so that such solid waste or hazardous waste or any constituent thereof may enter the environment or **be emitted into the air** or discharged into any waters, including ground waters.

42 U.S.C. § 6903(3). (Emphasis added).

In *CCAEJ*, the Ninth Circuit had this to say about § 6903(3):

> We note first that RCRA's definition of "disposal" does not include the act of "emitting." Instead, it includes only acts of discharging, depositing, injecting, dumping, spilling, leaking, and placing. That "emitting" is not included in that list permits us to assume, at least preliminarily, that "emitting" solid waste into the air does not constitute "disposal" under RCRA.

> . . .

**ORDER DENYING MOTION FOR RECONSIDERATION-       2**

> The text of §6903(3) is also very specific: it limits the
> definition of "disposal" to particular conduct causing a
> particular result. By its terms, "disposal" includes only
> conduct that results in the placement of solid waste
> "into or on any land or water." 42 U.S.C. §6903(d). That
> placement, in turn, must be "so that such solid waste
> . . . may enter the environment or be emitted into the air
> or discharged into any waters, including ground waters."
> *Id*. We therefore conclude that "disposal" occurs where
> the solid waste is *first* placed "into or on any land or water"
> and is *thereafter* "emitted into the air."

*Id*. at 1024. (Emphasis in original).

In their complaint, the *CCAEJ* plaintiffs alleged the defendants "dispose" of solid waste (diesel particulate matter) by allowing the waste to be "transported by wind and air currents onto the land and water near the railyards." Plaintiffs alleged the particulates are then "inhaled by people both directly and after the particles have fallen to the earth and then have been re-entrained into the air by wind, air currents, and passing vehicles." *Id*. at 1023. According to the Ninth Circuit:

> The solid waste at issue here . . . at least as it is characterized
> in Plaintiffs' complaint, is not first placed "into or on any
> land or water"; rather, it is first emitted into the air. Only
> after the waste is emitted into the air does it then travel
> "onto the land and water." To adopt Plaintiffs' interpretation
> of §6903(3), then, would effectively be to rearrange the
> wording of the statute- something that we, as a court,
> cannot do. Reading §6903(3) as Congress has drafted it,
> "disposal" does not extend to emissions of solid waste
> directly into the air.

*Id*. at 1024.

Defendant Teck Cominco Metals, Ltd. ("Teck") says this court "denied [its] motion [to strike or dismiss], agreeing with Plaintiffs that emissions to air could constitute a CERCLA disposal." This court, however, did not find that aerial emissions from Teck's smelter constitute a "CERCLA disposal." Indeed, they cannot be a "CERCLA disposal" because what gives rise to arranger liability

**ORDER DENYING MOTION
FOR RECONSIDERATION-      3**

under the plain terms of 42 U.S.C. § 9607(a)(3) is "disposal . . . of hazardous substances . . . at any facility . . . from which there is a release . . . of a hazardous substance . . . ."  Defendant's Trail, B.C. Smelter is not a "facility" under CERCLA, nor are the skies above the smelter, nor is the river running alongside the smelter.  The "facility" is the UCR Site located in the United States.  "Facility" is a term of art under CERCLA, defined at 42 U.S.C. § 9601(9) as "any site or area where a hazardous substance has been deposited, stored, **disposed of**, or placed, **or otherwise come to be located** . . . ."  (Emphasis added).  Liability under RCRA, on the other hand, does not depend on there being a disposal at a "facility."  RCRA's citizen suit provision authorizes private parties to sue "any person who has contributed or who is contributing to the past or present . . . disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).

As this court explained in its "Order Denying Motion To Strike Or Dismiss," the "CERCLA disposal" alleged by Plaintiffs occurred when hazardous substances from Teck's aerial emissions and its river discharges were deposited "into or on any land or water" of the UCR Site.  This disposal occurred in the "first instance" into or on land or water of the UCR Site and therefore, does not run afoul of RCRA's definition of "disposal" as interpreted by the Ninth Circuit in *CCAEJ*.

RCRA's definition of "disposal" is colored by how that term is used in the CERCLA context.  And in the CERCLA context, it means disposal "into or on any

///

///

///

**ORDER DENYING MOTION**
**FOR RECONSIDERATION-    4**

land or water" of the "facility," that being the UCR Site.[1]  RCRA's definition of "disposal" cannot be viewed apart from what § 9607(a)(3) of CERCLA has in mind regarding liability for the cleanup of a "facility."  RCRA is not concerned with cleanup of a "facility" and that term is not defined in RCRA.  The harm sought to be remedied in the *CCAEJ* case was inhalation of diesel particulate matter by humans. (See Plaintiff's First Amended Complaint, ECF No. 10 in CV-11-08608-SJO).  Recognizing as much, the Ninth Circuit in its decision framed the issue as whether RCRA "may be used to enjoin the emission from Defendant's railyards of particulate matter found in diesel exhaust."  *CCAEJ*, 764 F.3d at 1020.  The Ninth Circuit in *CCAEJ* had no reason to consider how its interpretation of "disposal" relates to the additional CERCLA definitions of "facility" and "release."

This court has analytically treated Defendant's discharge of slag and liquid effluent into the Columbia River in the same fashion.  The CERCLA disposal "into or on any land or water" was not the discharge of slag and liquid effluent into the Columbia River at the Trail Smelter.  Rather, it was the disposal of hazardous substances contained in that slag and effluent which occurred when the slag and effluent were deposited "into or on any land or water" of the UCR Site.  Accordingly,  as this court quoted in its "Order Denying Motion To Strike Or

///

---

[1] In *CCAEJ*, the Ninth Circuit acknowledged the importance of context in determining what "disposal" means under RCRA:

> Thus, we preliminarily conclude- based on the statute's wording considered alone **and in context**- that emitting diesel particulate matter into the air does not constitute "disposal" as that term is defined under RCRA.

764 F.3d at 1025.  (Emphasis added).

**ORDER DENYING MOTION
FOR RECONSIDERATION-        5**

1    Dismiss," one of its "Conclusions of Law" regarding Defendant's CERCLA

2    liability for river pathway response costs was that:

3            Disposal **at the UCR Site** occurred when, after Teck actively
         and intentionally discarded its slag and effluent as waste into
4        the Columbia River at Trail, at least some portion of that slag and
         effluent came to a point of repose at the UCR Site.
5
     (Paragraph 18 at pp. 42-43, ECF No. 1955).  (Emphasis added).
6
             Emissions into the air and river discharges in Trail, B.C. are disposals in an
7
     ordinary sense, but they do not constitute "CERCLA disposals."  And for that
8
     matter, they do not constitute RCRA disposals because there is no authority of
9
     which this court is aware that RCRA can be applied extraterritorially to regulate
10
     generation and disposal of hazardous waste in Canada.  Emissions to the air alone
11
     do not constitute a "CERCLA disposal."
12
             In over 30 years of CERCLA jurisprudence, no court has impliedly or
13
     expressly addressed the issue of whether aerial emissions leading to disposal of
14
     hazardous substances "into or on any land or water" are actionable under
15
     CERCLA.  A reasonable explanation is that the issue simply has not been raised in
16
     any CERCLA case.  Instead, it appears to have been treated as a given that if
17
     hazardous substances from aerial emissions are "disposed" of "into or on any land
18
     or water" of a CERCLA "facility," response costs and natural resource damages
19
     can be recovered for cleaning up those hazardous substances and compensating
20
     for harm caused.
21
             This court ascribes no particular significance to the fact the United States
22
     decided not to submit an *amicus* brief in support of a petition for rehearing *en*
23
     *banc* in the *CCAEJ* case.  A reasonable explanation is the United States recognized
24
     the circuit was unlikely to grant a petition to address the CERCLA ramifications
25
     of a decision that did not involve CERCLA.  Instead, the United States opted to
26

27   **ORDER DENYING MOTION**
28   **FOR RECONSIDERATION-      6**

file an *amicus* brief with this court in this CERCLA case.  Likewise, this court ascribes no particular significance to the circuit's declining the *CCAEJ* plaintiffs' petition for rehearing *en banc*.  A reasonable explanation is the circuit was unwilling to undertake an examination of potential CERCLA ramifications from a decision that did not involve CERCLA.

## II. CONCLUSION/CERTIFICATION

Fed. R. Civ. P. 60(b)(6) permits a court to relieve a party from an order for "any reason that justifies relief."  It "is to be used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances exist."  *Harvest v. Castro*, 531 F.3d 737, 749 (9th Cir. 2008).  "A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009).

For the reasons set forth above, this court's "Order Denying Motion To Strike Or Dismiss" is not clearly contrary to the Ninth Circuit's decision in *CCAEJ* and therefore, is not clearly erroneous so as to warrant reconsideration. Nor does *CCAEJ*, on its face at least, represent an "intervening change in the controlling law" with regard to CERCLA and indeed, it is not apparent it even represents an "intervening change in the controlling law" with regard to RCRA. Accordingly, Teck's Motion For Reconsideration (ECF No. 2118) is **DENIED**.

While this court is confident in its analysis of how RCRA's definition of "disposal" is to be interpreted in a CERCLA context, it again acknowledges that apparently no court has addressed this issue head-on.  Therefore, the court hereby

**ORDER DENYING MOTION**
**FOR RECONSIDERATION-       7**

**CERTIFIES** its "Order Denying Motion To Strike Or Dismiss" and this "Order Denying Motion For Reconsideration" for an immediate interlocutory appeal to the Ninth Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b). Because of the Ninth Circuit's decision in *CCAEJ*, in particular its interpretation of the term "disposal" as defined in RCRA, there is a "substantial ground for difference of opinion" on the "controlling question of law" of whether Teck's aerial emissions are actionable under CERCLA if they result in a "disposal" of hazardous substances "into or on any land or water" of the UCR Site (a CERCLA "facility"). A decision from the Ninth Circuit on this issue will "materially advance the ultimate termination of this litigation." If the air pathway is eliminated from this case, it will undoubtedly reduce the time necessary to bring this case to a conclusion because it will leave only the recovery of response costs and natural resource damages resulting from Teck's discharges of slag and effluent into the river.

Of course, this court does not have the final say on whether there will be an interlocutory appeal. Within ten (10) days after this court's certification, Teck will have to file a petition with the circuit seeking permission to appeal. Fed. R. App. P. 5. This court has discretion to stay the air pathway portion of the case while that petition is pending. The parties have already stipulated to a three months extension of certain Phase II pretrial dates pertaining primarily to air allegations (ECF Nos. 2133 and 2142).[2] Lest there be any misunderstanding as to precisely

---

[2] It is the court's understanding that the parties have not stipulated to alter any of the Phase II Schedule dates as they pertain to the river pathway portion of the case in Phase II (determination of recoverable response costs), with the exception of the date pertaining to completion of fact discovery.

**ORDER DENYING MOTION FOR RECONSIDERATION-    8**

which dates are impacted, the parties may wish to file an additional stipulation which clarifies the same. Depending on the length of time it takes for the circuit to determine whether it will entertain an interlocutory appeal, this court will, upon motion by the Defendant or stipulation of the parties, consider whether that time should be added to the extension to which the parties have already stipulated.

Resolution of Defendant's Motion To Modify Phase II Schedule (ECF No. 2119) is **STAYED** pending the Ninth Circuit's determination of whether it will entertain an interlocutory appeal in this matter. Should the circuit deny permission to appeal, the court will proceed to resolve the motion. Should the Ninth Circuit permit the appeal, this court will stay the air pathway portion of the case pending resolution of the appeal, seemingly rendering moot Defendant's Motion To Modify Phase II Schedule.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and forward copies to counsel of record.

**DATED** this ___31st___ day of December, 2014.


*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER DENYING MOTION FOR RECONSIDERATION-     9**