UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOSEPH A. PAKOOTAS, an individual and enrolled member of the Confederated Tribes of the Colville Reservation; and DONALD R. MICHEL, an individual and enrolled member of the Confederated Tribes of the Colville Reservation, and THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION,

Plaintiffs,

and

THE STATE OF WASHINGTON,

Plaintiff-Intervenor,

vs.

TECK COMINCO METALS, LTD., a Canadian corporation,

Defendant.

No. CV-04-256-LRS

**ORDER DENYING MOTION FOR RECONSIDERATION**

**BEFORE THE COURT** is Defendant's Motion For Reconsideration (ECF No. 2400). This motion is heard without oral argument.

**I. BACKGROUND**

Defendant asks the court to reconsider its April 1, 2016 "Order Re

Reconsideration" (ECF No. 2393) in which it *sua sponte* reconsidered its "Order Granting Motion For Summary Adjudication, In Part" (ECF No. 2288) and found the Plaintiff Confederated Tribes Of The Colville Reservation ("Tribes") could recover response costs for "enforcement activities" related to "removal" and/or "remedial action."

In its "Order Re Reconsideration," this court rhetorically asked why the phrase "enforcement activities" in 42 U.S.C. §9601(25) is not sufficient to provide for an award of private litigants' attorney's fees associated with bringing a cost recovery action under §9607(a)(4)(B), but should be sufficient when a State or an Indian tribe brings a cost recovery action under §9607(a)(4)(A).[1] This court's answer was:

> It makes sense simply because these are governmental entities with inherent enforcement authority, unlike private parties. This is recognized by the fact that governmental entities are entitled to "**all costs** of removal or remedial action . . . not inconsistent with the national contingency plan," whereas private parties are entitled only to "**necessary costs** of response . . . consistent with the national contingency plan." (Emphasis added). It is presumed that "all costs" incurred by a governmental entity are consistent with the NCP and a defendant has the burden of proving to the contrary. On the other hand, a private party has the burden of proving not only that its costs were "necessary," but that they are also consistent with the NCP. Governmental entities and private entities are clearly treated differently under §9607 and that difference is sufficient to justify awarding States and Indian tribes response costs for "enforcement activities," even though unlike the federal government (EPA), they are not acting pursuant to § 9604 or some other specific statutory provision of CERCLA (e.g., § 9606 abatement action, § 9622 settlement).

(ECF No. 2393 at pp. 8-9)(Emphasis in original).

Defendant contends the court clearly erred in concluding the Tribes have

[1] 42 U.S.C. § 9601(25) states: "The terms 'respond' or 'response' means remove, removal, remedy, and remedial action; all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto."

"inherent authority" to enforce CERCLA. According to Defendant, "the Tribes do not possess inherent authority to enforce a *federal* statute such as CERCLA" and §9601(25) "does not *convey* enforcement authority to Indian tribes any more than it conveys such authority to other public entities or private parties." (ECF No. 2400 at p. 3). (*Italicized* emphasis in original).

**II. DISCUSSION**

The Tribes correctly point out that this court's reference to "inherent enforcement authority" was no more than an acknowledgment that the Tribes are included in the category of sovereigns set forth in §9607(a)(4)(A) as distinct from the "any other person" category set forth in §9607(a)(4)(B). This court found it significant that the sovereigns are entitled to recover "all costs," whereas the "any other person[s]" are limited to "necessary costs." Defendant does not discuss that distinction and instead asserts that §9607 merely "provides a procedural edge in the form of NCP constancy presumption to federal, state and tribal governments" which "has nothing to do with enforcement authority, inherent or otherwise."

Pursuant to *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 814-815,114 S.Ct. 1960 (1994), the inquiry to be answered is whether in §9607(a)(4), Congress explicitly authorized the recovery of attorney's fees by "the United States Government or a State or an Indian Tribe" as a component of response costs.[2] In *Key Tronic*, the U.S. Supreme Court found that with regard to private parties, there is no such

---

[2] The Supreme Court observed that although §9607, "the liabilities and defenses provision," does not expressly mention recovery of attorney's fees, "[t]he absence of specific reference to attorney's fees is not dispositive if the statute otherwise evinces an intent to provide for such fees." 511 U.S. at 815.

statutory authorization. The Supreme Court was unpersuaded "that a private action under § [9607] is one of the enforcement activities covered by that definition [in §9601(25)] and that fees should therefore be available in private litigation as well as in government action." *Id*. at 817. The Court provided three reasons:

> First, although [§9607] unquestionably provides a cause of action for private parties to seek recovery of cleanup costs, **that cause of action is not explicitly set out in the text of the statute**. To conclude that a provision that only impliedly authorizes suit nonetheless provides for attorney's fees with the clarity required by *Alyeska* [ ] would be unusual if not unprecedented. . . .
>
> Second, Congress included two express provisions for fee awards in SARA [ ] provisions without including a similar provision in either § 113, which expressly authorizes contribution claims, or in § 107, **which impliedly authorizes private parties to recover cleanup costs from other PRPs** [ ]. These omissions strongly suggest a deliberate decision not to authorize such awards.
>
> Third, we believe it would stretch the plain terms of the phrase "enforcement activities" too far to construe it as encompassing the kind of **private cost recovery action** at issue in this case. Though we offer no comment on the extent to which that phrase forms the basis for the Government's recovery of attorney's fees through § 107, **the term "enforcement activity" is not sufficiently explicit to embody a private action under § 107 to recover cleanup costs**. . . . .

*Id*. at 818-19. (Emphasis added).

Unlike the case with private parties, §9607 explicitly sets out a cause of action for "the United States Government or a State or an Indian Tribe" to recover "all costs of removal or remedial action incurred." §9607 expressly authorizes these sovereigns to recover cleanup costs from other PRPs (Potentially

Responsible Parties).[3] Finally, unlike the case with private parties, the term "enforcement activity" is sufficiently explicit to embody a sovereign action under §9607 to recover cleanup costs. In sum, §9607 provides explicit statutory authority for the award of a sovereign's attorney's fees associated with bringing a cost recovery action.

The Ninth Circuit's decision in *U.S. v. Chapman*, 146 F.3d 1166 (9th Cir. 1998), supports that conclusion. Because *Chapman* involved a cost recovery action by the United States Government (Environmental Protection Agency), it is no surprise the circuit would cite §9604(b) which allows the federal government to recover costs for all of its investigations and activities, including legal work. *Id*. at 1175. But the circuit did not hang its hat exclusively on that provision when it appears it could have done so. It also cited §9601(25) which specifically states that a response action includes "enforcement activities" and concluded that "statutory authority permits the government, which is the prevailing party in this litigation, to recover attorney fees attributable to the litigation as part of its response costs." *Id*. at 1175. The Ninth Circuit added:

> Congress does not have to "incant the magic phrase 'attorney's fees'" where it has "explicitly authorized the recovery of costs of 'enforcement activities'" and enforcement activities naturally include attorney fees. [Citation omitted]. **Section 107(a)(4)(A) evinces an intent to provide for attorney fees because it allows the government to recover "all costs of removal or remedial action" including "enforcement activities."**
>
> Finally, there are persuasive policy arguments in favor of awarding the government its attorney fees. CERCLA is remedial legislation that should be construed liberally to carry out its purpose. [Citation omitted]. Congress intended to "facilitate the prompt cleanup of hazardous waste sites by placing the ultimate financial responsibility for cleanup on those responsible for hazardous wastes."

---

[3] The Tribes are not a PRP in this case.

[Citation omitted].

*Id*. (Emphasis added).

This rationale applies regardless of whether the sovereign is "the United States Government or a State or an Indian Tribe." The Ninth Circuit seemingly recognized this in its subsequent decision in *Fireman's Fund Insurance Company v. City of Lodi, California*, 302 F.3d 928, 953 (9th Cir. 2003), when it stated that. "CERCLA § [9607](a)(4) permits the United States Government or a State **or an Indian tribe** to recover all 'reasonable attorney fees' 'attributable to the litigation as part of its response costs' if it is the 'prevailing party.'" (Emphasis added). [4]

Sovereigns- the United States Government or a State or an Indian Tribe- are statutorily authorized by virtue of §9607 alone to recover as response costs, attorney's fees for "enforcement activities" related to removal and/or remedial action. Indian tribes and States, like the federal government, have "statutory authority" under §9607 which permits them "to recover attorney fees attributable to the litigation as part of [their] response costs." *Chapman*, 146 F.3d at 1175. For a sovereign, whether it is "the United States Government or a State or an Indian Tribe," prosecuting a §9607(a)(4)(A) cost recovery action is an "enforcement activity." A sovereign can recover costs for "enforcement activities" which are related to removal and/or remedial action.

---

[4] The observations made by the District Court of Idaho in its unpublished decision in *Nu-West Mining Inc. v. United States*, 2011 WL 2604740 (D. Idaho 2011), compared the federal government to a private party regarding rights to attorney's fees in CERCLA litigation. Like *Fireman's Fund*, it did not consider the the specific question of an Indian tribe's right to attorney's fees in a Section 9607(a)(4)(A) cost recovery action.

## III. CONCLUSION

The court did not clearly err in concluding in its "Order Re Reconsideration" that the Tribes can recover response costs for "enforcement activities" related to removal and/or remedial action. This includes attorney's fees and litigation costs related to removal and/or remedial action. Defendants' Motion For Reconsideration (ECF No. 2400) is **DENIED**.

Within twenty (20) days of the date of this order, the parties may serve and file supplemental memoranda (no more than twenty (20) pages in length) and supplemental findings of fact and conclusions of law addressing the impact of the revised legal posture of the case: that the Tribes are entitled to recover response costs for "enforcement activities" related to removal and/or remedial action.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this order and forward copies to counsel of record.

**DATED** this ___24th___ day of June, 2016.

***s/Lonny R. Suko***

LONNY R. SUKO
Senior United States District Judge