Bryce J. Wilcox, WSBA 21728
Deanna M. Willman, WSBA 52585
WITHERSPOON BRAJCICH MCPHEE, PLLC
601 W. Main Avenue, Suite 714
Spokane, WA 99201
Telephone: (509) 455-9077
Email: BWilcox@workwith.com; DWillman@workwith.com

Deborah B. Baum, *pro hac vice*
Amanda G. Halter, *pro hac vice*
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeen Street, NW
Washington, D.C. 20036
Telephone: (202) 663.8000
909 Fannin, Suite 2000
Houston, TX 77010
Telephone: (713) 276-7600
Email: Deborah.Baum@pillsburylaw.com; Amanda.Halter@pillsburylaw.com

Attorneys for Defendant Teck Metals Ltd. (f/k/a Teck Cominco Metals Ltd.)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH A. PAKOOTAS, an individual and enrolled member of the Confederated Tribes of the Colville Reservation; and DONALD R. MICHEL, an individual and enrolled member of the Confederated Tribes of the Colville Reservation, and THE CONFEDERATED TRIBES OF THE COLVILLE RESERVATION,<br>Plaintiffs,<br>*and*<br>STATE OF WASHINGTON,<br>Plaintiff/Intervenor,<br>*v.*<br>TECK COMINCO METALS LTD., a Canadian corporation,<br>Defendant. | NO. 2:04-cv-00256-SAB<br><br>MOTION TO DISMISS STATE'S FIFTH AMENDED COMPLAINT CLAIM SEVEN (MTCA)<br><br>June 6, 2022<br>With Oral Argument |



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

Defendant Teck Cominco Metals Ltd. ("Teck") pursuant to Fed. R. Civ. P. 12(b)(6) respectfully submits its motion to dismiss the State's Claim Seven in its Fifth Amended Complaint, which it brings under the Model Toxics Control Act ("MTCA"), for failure to state a claim upon which relief may granted.

## INTRODUCTION

The State attempts an utterly unprecedented invocation of MTCA.[1] Frustrated by the limitations of the federal environmental laws, it asks this court now to apply a state law intended as a legal basis for the administration and enforcement of clean-up obligations within the State (which are in this case already well underway under U.S. EPA oversight with the State's participation), to a Canadian company's lawful discharges and emissions into the Canadian water and air. Were this claim allowed to stand, there is nothing to prevent the State from seeking to apply MTCA to Chinese companies whose air emissions are regularly shown to contaminate the entire Pacific Northwest with mercury, or to California, Oregon, or Idaho-based electric utilities, for the same reason. This sort of international enforcement is not the stuff of discrete and different state statutory schemes and standards.

Totally apart from the basic constitutional principles it violates, one of the surest signs that this extraterritorial application of MTCA was never intended is the extreme

[1] We have found no example of the State ever bringing a claim under MTCA against a foreign company for releases that originated in that foreign country. Nor are we aware of the State ever invoking MTCA to recover NRDs other than as an adjunct to an enforcement or cost recovery action against a Washington-based facility that released hazardous substances directly into the Washington environment. Nor are we aware of the State ever applying MTCA to aerial emissions.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

lengths to which the State had to go to try to shoehorn its fact allegations into the necessary legal foundation for a MTCA claim against a Canadian company. It doesn't square; it doesn't really come close. There are myriad examples, but probably the most stunning are the State's conclusory allegations (needless to say, unsupported by any facts) in its attempt to squeeze these circumstances into the foundational legal requirements for recovery of NRD under MTCA. As explained in more detail below, any MTCA NRD liability must be predicated on a "release" from Teck's facility, a release being defined in MTCA as a hazardous substance's "entry" into the environment – and its entry must occur in Washington. Moreover, "passive migration" of hazardous material does not qualify as a "release" under Washington law.

Therefore, the State cannot rely on the migration of contaminants over the international border, whether in the air or the water. Nor can it rely on the entry of contaminants into the Canadian environment from the smelter Teck now owns in Trail, British Columbia. So, instead, the State now alleges that the entire Upper Columbia River and Lake Roosevelt "Site" are collectively the "facility" from which the hazardous materials were "released," and that *Teck* somehow "owns" that facility. (Fifth Am. Comp. at ¶¶ 11.2, 11.7-11.9.)

As a practical matter, however, independent of the MTCA-specific reasons that the entire claim fails, the primary difference between the State's original CERCLA claims and these MTCA claims is the addition of the air pathway – and that claim fails for essentially the same reasons as it failed under CERCLA. And infecting the whole claim are important principles of constitutional law that prevent the application of state



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

law to foreign commercial activity such as Teck's – especially when United States federal law has applied a legal framework already.

## LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" is proper when a claim fails to allege "sufficient facts . . . to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, the facts alleged must state a facially plausible claim for relief. *Shroyer*, 622 F.3d at 1041. Conclusory allegations are insufficient to plead a claim. *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) ("Courts need not accept as true legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## ARGUMENT

### I. THE STATE FAILED TO STATE A CLAIM FOR NRD UNDER MTCA

The State's Fifth Amended Complaint sets forth a new theory of Teck's liability under MTCA for "all natural resource damages and investigative costs resulting from releases or threatened releases of hazardous substances" at the UCR Site. State's 5th Am. Comp. ¶ 11.10; Wash. Rev. Code §§ 70A.305-040(2). MTCA applies to an "owner or operator" of a facility from which hazardous substances enter the



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

Washington environment, and to "arrangers" whose hazardous substances are disposed of in Washington State.

But the State did not plead facts sufficient to support either "owner or operator" liability for either discharges to the water or emissions to the air, and did not plead facts sufficient to support "arranger" liability for aerial emissions (nor for discharges to water, which also must qualify as a "release"). The State alleges that Teck is an "owner" of the entire UCR Site, and that it "owned or possessed a hazardous substance" and "arranged for disposal or treatment of the hazardous substance" at the facility or "otherwise generated hazardous wastes disposed of or treated" at the facility. State's 5th Am. Comp. ¶¶ 11.7-11.10; Wash. Rev. Code §§ 70A.305-040(1)(a)-(c), (2).

Apart from the completely baseless allegation that Teck "owns" the UCR Site – which purports to hold up this legal house of cards – Teck's MTCA liability is necessarily premised on the alleged "release" of hazardous substances from the Trail Smelter as discharges into the UCR and aerial emissions into the atmosphere that then "travelled through the air into the United States." State's 5th Am. Comp. ¶¶ 11.3-11.4. Fundamentally, for an actionable "release" to occur under MTCA, the hazardous material must have "entered" the environment in Washington State, and Washington law does not recognize passive migration of hazardous substances as a "release." The



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

State's allegations thus cannot support a claim for relief under MTCA under any pathway and should be dismissed.[2]

**1.** <u>The State fails to state a claim for liability under MTCA for NRDs under either the water or air pathways.</u>

To make a claim under MTCA, the State must first demonstrate that Teck falls into any of five categories of potentially liable parties. Wash. Rev. Code § 70A.305.040(1). The State alleges that Teck is the current owner and operator of a facility, prior owner or operator of a facility at the time of disposal or release of hazardous substances, or a person who owned or possessed a hazardous substance who

[2] The flimsiness of the footings for the basic foundational elements of Teck's supposed liability as a potentially liable person may be the reason the State did not follow its own precondition to making a claim under MTCA – doing so would no doubt have shown a light on the fatal legal shortcomings. As a precondition to exercising its authority under MTCA, the WDOE must issue a "potentially liable person" (PLP) notice letter indicating to the PLP when the department has credible evidence of their potential liability under Rev. Code Wash. § 70A.305.040 and giving the PLP an opportunity to respond. This requirement may only be skipped in an emergency or upon voluntary waiver by the PLP. Rev. Code. Wash. § 70A.305.020(26) (defining PLP as "any person whom the department finds, based on credible evidence, to be liable under RCW 70A.305.040. The department shall give notice to any such person and allow an opportunity for comment before making the finding, unless an emergency requires otherwise."); Wash. Admin. Code § 173-340-500 (describing the process for WDOE to issue a status letter, the PLP's opportunity to comment, WDOE's review of such comments, and a final determination of PLP status, unless in the event of an emergency or the PLP voluntarily waives this notice requirement). No such PLP status determination was ever made against Teck, nor is any fulfilment of this required process alleged. Therefore, as the threshold matter, the State has not alleged fulfilment of its legal obligations to pursue an NRD claim against Teck. Even if it had, however, the claim fails as a matter of law, for all the reasons described herein.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

arranged for disposal of the hazardous substance. *Id.* at §§ 70A.305.040(1)(a)-(c). The State has failed to state a claim under any of these three categories of liability.

a. The State fails to state a claim for "owner" liability under MTCA for either the discharges to the UCR or alleged aerial emissions.

The State alleges that Teck is liable as an "owner" of the UCR Site, which it alleges is the "facility."[3] MTCA liability attaches to an "owner . . . of the facility" or "any person who owned . . . the facility at the time of disposal or release of the hazardous substances." Wash. Rev. Code §§ 70A.305.040(1)(a)-(b). An "owner" is "[a]ny person with any ownership interest in the facility." *Id.* at § 70A.305.020(22). "Facility" means "(a) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, vessel, or aircraft, or (b) any site or area where a hazardous substance, other than a consumer product in consumer use, has been deposited, stored, disposed of, or placed, or otherwise come to be located." *Id.* at § 70A.305.020(8). The State broadly defines the "facility" in its Complaint as the entire UCR Site, including the upland areas. State's 5th Am. Comp. ¶ 11.2. As a threshold matter, MTCA's definition plainly seeks to address the specific place where hazardous substances were directly placed, and not

---

[3] Although the Ninth Circuit concluded that under CERCLA, the UCR was a facility and that slag that came to rest in the facility continued to release hazardous substances, it is not at all clear that the "UCR Site" could even theoretically qualify as a facility under MTCA.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

an entire geographic area where they may have come to be located due to passive migration.

But even assuming the entire "UCR Site" could theoretically be a "facility," the State makes only bald conclusory statements that Teck is an "owner" of the UCR Site. It includes no facts to support the allegations, because, of course, there are none. State's 5th Am. Comp. ¶¶ 11.7-11.8. While the State addresses Teck's ownership of the Trail Smelter, *see id*. at ¶ 2.3, the Complaint is "bereft of any [reference to] deeds, grants, patents, or other instruments conveying 'any ownership interest'" of the facility—the UCR Site—to Teck. *See Pope Res., LP v. Wash. State Dep't of Nat. Res.*, 418 P.3d 90, 91 (Wash. 2018) (holding that the Washington Department of Natural Resources ("WDNR") was not an owner of the Port Gamble Bay facility despite the State's ownership of the beds and shores of all navigable waters in the state and the State's delegation of aquatic lands management to WDNR, including aquatic lands leasing). Teck is not, nor has it ever been, an owner of any portion of the UCR Site. Indeed, much of the UCR Site is an area unownable by a foreign corporation because, as the State acknowledges, it is a navigable water of the United States. *See* State's 5th Am. Comp. ¶ 4.1. The Court should not take the State's bare assertions as true. The State has failed state a facially plausible claim for relief against Teck as an "owner" under MTCA.

b. <u>The State fails to state a claim for "operator" liability under MTCA for either discharges to the water or aerial emissions.</u>



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

The State makes similarly conclusory statements that Teck is an "operator" of the UCR Site, sans facts. State's 5th Am. Comp. ¶¶ 11.7-11.8. Under MTCA, liability may attach to an "operator of the facility" or "any person who . . . operated the facility at the time of disposal or release of the hazardous substances." Wash. Rev. Code §§ 70A.305.040(1)(a)-(b). An "operator" is "[a]ny person . . . who exercises any control over the facility." *Id.* § 70A.305.020(22). "'[A]n operator is simply someone who directs the workings of, manages, or conducts the affairs of a facility.'" *Pope Res.*, 418 P.3d at 98 (quoting *Taliesen Corp. v. Razore Land Co.*, 144 P.3d 1185, 1198 (Wash. Ct. App. 2006)) (holding that the WDNR was not an operator of the Port Gamble Bay facility because, though it leased aquatic lands, it did not have any sort of direct business management role over the facility). Moreover, the operator "must manage, direct, or conduct operations specifically related to pollution, that is operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Seattle Times Co. v. LeatherCare, Inc.*, 337 F. Supp. 3d 999, 1051 (W.D. Wash. 2018), aff'd, 829 Fed. App'x 176 (9th Cir. 2020) (quoting *U.S. v. Bestfoods*, 524 U.S. 51, 66-67 (1998)).

The State has not alleged that at any time Teck had the requisite authority and control over any portion of the UCR Site with respect to either discharges to the river or aerial emissions. To the extent the Complaint discusses Teck's operations, it is necessarily limited to Teck's operations in Canada. State's 5th Am. Comp. ¶¶ 4.1-42. The State's bare assertions of Teck's status as an "operator" of the UCR site are not sufficient to state a claim under MTCA.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

c. The State fails to state a claim for "arranger" liability under MTCA for alleged aerial emissions.

The State also makes conclusory statements that Teck is an "arranger" for the disposal of hazardous substances at the UCR Site, without facts to support such disposal for aerial emissions. State's 5th Am. Comp. ¶ 11.9. Moreover, aerial emissions from a stationary source such as the Teck's Canadian smelter do not constitute a "disposal" under MTCA.

The State's theory of "disposal" under MTCA for aerial emissions is the very same theory Plaintiffs attempted and lost under CERCLA—namely, passive migration of aerial emissions into Washington from the Trail Smelter's stacks 10 miles north of the Canadian border. *See Pakootas v. Teck Cominco Metals Ltd.*, 830 F.3d 975, 983 (9th Cir. 2016) (citing *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 870 (9th Cir. 2001)). Particularly, the State alleges Teck's "discharges in the form of emissions into the atmosphere from the Cominco Smelter travelled through the air into the United States, resulting in the disposal of airborne contaminants" at the UCR Site. State's 5th Am. Comp. ¶ 11.4. Under CERCLA, the Ninth Circuit is clear that aerial emissions do not constitute a disposal. *Id*.

As with CERCLA, MTCA's arranger liability provisions turn on whether there was a "disposal" of hazardous substances at the facility. Wash. Rev. Code § 70A.305.040(1)(c). Unlike CERCLA, which cross-references the federal Resource Conservation and Recovery Act's ("RCRA") definition of "disposal," (*see* 42 U.S.C. § 9601(29)), MTCA does not define "disposal." Nonetheless, giving "disposal" its



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

ordinary meaning in light of the relevant legislative purposes, Washington appellate courts have construed "disposal" under MTCA to largely parallel the CERCLA/RCRA definition and, in particular, to encompass "putting, placing, transferring, distributing, discharging, discarding, delivering, abandoning, depositing, injecting, dumping, and spilling." *Modern Sewer Corp. v. Nelson Distrib., Inc.*, 109 P.3d 11, 12–14 (Wash. Ct. App. 2005); *see also Taliesen Corp.*,144 P.3d at 1202 (citing same and stating that "disposal" is broader than the dictionary meaning "to transfer into new hands or the control of someone else" or to "get rid of: throw away" and to "alienate, relinquish, part with, or get rid of," but does not include alienation of real property on which a facility is located).

Neither MTCA nor CERCLA defines the passive migration of contaminants, much less passive migration over an international border, as "disposal." As the Ninth Circuit earlier explained in this case in the CERCLA context, per its decision in *Carson Harbor*, "disposal" is "akin to 'putting down' or placement by someone and that '[n]othing in the context of the statute or the term "disposal" suggests that Congress meant to include chemical or geologic processes or passive migration,' *i.e.*, the gradual spread of contaminants without human intervention." *Pakootas*, 830 F.3d at 983 (quoting *Carson Harbor*, 270 F.3d at 870 (9th Cir. 2001)). Further, in construing the broader term "release" under MTCA, which includes "disposal," a Washington appellate court acknowledged that "mere passive migration of hazardous substances is not a 'release' within the meaning of MTCA." *Taliesen Corp.*, 144 P.3d at 1202.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

Because any aerial emissions from the Trail Smelter necessarily occurred in British Columbia, then would have, as the State acknowledges, had to migrate at least 10 miles down to the border then among the hundreds of river miles and adjacent uplands, "disposal" in the State's Complaint is premised on a theory of passive migration that is not recognized under MTCA. This theory was expressly rejected by the Ninth Circuit in the CERCLA context. And there is no basis, either in the statute or judicial interpretation, to interpret MTCA as inconsistent with CERCLA on this fundamental point. *See also Bird-Johnson Corp. v. Dana Corp.*, 833 P.2d 375, 377 (Wash. 1992) (citing *Hoffer v. State*, 776 P.2d 963 (Wash. 1989)) ("[F]ederal cases interpreting similar language in CERCLA . . . are persuasive, although not controlling, when interpreting the MTCA.")

**2.** There is no actionable "release" with respect to either pathway.

Even assuming Teck did fit any of the categories of liable persons, the State did not and cannot plead a "release," which is a necessary predicate for any NRD claim under MTCA, regardless of the type of liable party or pathway. Under MTCA, liability only attaches for "natural resource damages resulting from the *releases or threatened releases* of hazardous substances." Wash. Rev. Code § 70A.305.040(2) (emphasis added).

MTCA provides in turn that "'[r]elease means any intentional or unintentional *entry* of any hazardous substance *into the environment,* including but not limited to the abandonment or disposal of containers of hazardous substances." *Id.* § 70A.305.020(32) (emphasis added). "Environment" is geographically limited to mean



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

"any plant, animal, natural resource, surface water (including underlying sediments), groundwater, drinking water supply, land surface (including tidelands and shorelands) or subsurface strata, or ambient air *within the state of Washington* or under the jurisdiction of the state of Washington." Wash. Admin. Code § 173-340-200 (emphasis added). Thus, the actionable "release" under MTCA arises from the "entry" of hazardous substances into the environment – in Washington.

Here, however, "entry" into the environment occurred in Canada, at the Trail Smelter, where the State alleges aerial emissions from Trail's stacks and discharges to the water from the Trail facility occurred. State's 5th Am. Comp. ¶ 2.3 ("Teck Cominco owns and operates the world's largest integrated lead-zinc smelting and refining complex in Trail, British Columbia, Canada (Cominco Smelter), located approximately 10 river miles north of the United States-Canada border."); *Id.* ¶ 4.1 ("From approximately 1906 to mid-1995, Teck Cominco generated and discharged into the Columbia River certain hazardous substances in slag, as a solid form, and in liquid waste. . . ."). But then it alleges that the contaminants passively migrated into the United States. *E.g., Id*. ("The slag and liquid waste generated and discharged by Teck Cominco into the Columbia River carries downstream, resulting in disposal into waters of the United States."); *Id.* ¶ 4.2 ("From approximately 1906 to the present time, Teck Cominco emitted certain hazardous substances. . . . The hazardous substances, discharged into the atmosphere by the Cominco Smelter travelled through the air into the United States resulting in the disposal of airborne hazardous substances into the Upper Columbia River Site."); ¶ 4.3 ("Over time a significant volume of Teck



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

Cominco's slag, liquid waste and air emissions, and the hazardous substances contained therein, have come to be located in . . . the surface water and ground water, sediments, upland areas, and biological resources that comprise the Upper Columbia River Site.").

Unlike CERCLA, where "release"[4] is defined differently and has been interpreted to include "'passive movement and migration of hazardous substances by mother nature,'" *see Pakootas v. Teck Cominco Metals Ltd.*, 452 F.3d 1066, 1075 (2006), MTCA, by contrast, defines "release" as the "entry" of hazardous substances into the environment. Here, the "entry" necessarily occurs in Canada, not in Washington, as required by MTCA.

Should the State attempt to rely on the Ninth Circuit's prior interpretations of a CERCLA "release" to argue that the "entry" in question occurred when the Canadian discharges and emissions migrated over the U.S.-Canada border or when contaminants "leached" from slag in the UCR site, that reliance would be mistaken. The analysis the Ninth Circuit crafted to reach a determination that CERCLA was not being extraterritorially applied in this litigation is unworkable under MTCA because MTCA defines "release" differently. The Ninth Circuit reasoned, "because the actual or threatened release of hazardous substances triggers CERCLA liability, and because the actual or threatened release here, the *leaching* of hazardous substances from slag

---

[4] CERCLA defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . .", without the qualification of "entry", 42 U.S.C. § 9601(22).



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

that settled at the Site, took place in the United States, this case involves a domestic application of CERCLA." *Pakootas*, 452 F.3d at 1078 (emphasis added). But "mere passive migration of hazardous substances is not a 'release' within the meaning of the MTCA." *Taliesen Corp.*, 144 P.3d at 1202. Moreover, unlike CERCLA's definition of "release," MTCA is predicated on an "entry" into the environment, and the only "entry" is at the point of discharge or emission in Canada. The State's Complaint effectively acknowledges as much. State's 5th Am. Comp. ¶¶ 4.1-4.3. While contaminants may well passively migrate after such entry, such passive migration cannot properly be the "entry" into the environment.

The State pleads no "release" into Washington State as "release" is defined under MTCA. Therefore, it has failed to plead sufficient facts to support a cognizable theory of MTCA liability for natural resource damages and associated costs because it has not and cannot plead facts that demonstrate a "release" under MTCA.

**B. Extraterritorial application of MTCA would in any event be counter to its text and unconstitutional.**

The State seeks to apply its own environmental laws to reach over an international border and regulate a Canadian entity's lawful releases into Canada. The plain text of MTCA bars this overreach, as described above. Even if there were any question about whether the plain text barred the extraterritorial application, then the important constitutional principles would bar the State's action in any event.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

**1.** <u>MTCA's text does not permit extraterritorial application.</u>

In Washington, whether a state statute has extraterritorial reach is generally a question of statutory interpretation. *See Thornell v. Seattle Serv. Bureau, Inc.*, 363 P.3d 587, 589-90 (Wash. 2015) (finding that permissibility of extraterritorial application of state statute was a question of "the interpretation of the statute"); *Trader Joe's Co. v. Hallat*, 835 F.3d 960, 976-77 (9th Cir. 2016) (affirming dismissal upon determining state statute did not support extraterritorial application under facts as alleged). Furthermore, even under alternative circumstances where a state statute is silent regarding its extraterritorial reach, this Court has shown an unwillingness to apply state law to entirely extraterritorial conduct. For example, in another matter involving Teck, this Court held that Washington's nuisance statute, which is silent regarding extraterritoriality, could not apply to Teck's releases originating from Canada. *See Anderson v. Teck Metals, Ltd.*, No. 13-cv-420-LRS, 2015 WL 59100, at *10-11 (E.D. Wash. Jan. 5, 2015) (dismissing state public nuisance claims under Fed. R. Civ. P. 12(b)(6)).

As discussed above, MTCA on its face does not allow for this extraterritorial application because it requires an "entry" of hazardous substances within the State of Washington. Here, the only potential "entry" of discharges and emissions occurred in Canada, not the State of Washington.

To allow the State to interpret "entry" as it attempts in its Fifth Amended Complaint would give MTCA nearly boundless jurisdiction. The State would not only have grounds to regulate lawful Canadian operations, but also Asian industries that



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

release contaminants that eventually find their way into Washington. Not only would this interpretation be inconsistent with the Washington State Legislature's clear limitation of MTCA to releases in the State of Washington, it would also run afoul of the Constitution by allowing the State to usurp the federal government's extensive powers with regards to interactions with foreign nations, as discussed below.

Instead, the State's MTCA claims under these facts are more analogous to the state public nuisance claims in *Anderson* than they are to the CERCLA claims in this case. As in *Anderson,* the State here attempts to use a state law to control conduct that occurred entirely within Canada. In *Anderson*, the Court concluded that "[n]o court has ever sanctioned such an extraterritorial application." *Anderson,* 2015 WL 59100, at *11. Thus, just as this Court did in *Anderson*, the Court should dismiss the State's MTCA claims.

**2.** <u>The extraterritorial application of MTCA is unconstitutional.</u>

Even if one could interpret MTCA's text to regulate releases in Canada and other foreign nations that eventually find their way to the State of Washington, this would exceed the constitutional limitations on the State's power to regulate interactions, including commerce, with foreign nations. Thus, under the doctrine of constitutional avoidance, this interpretation cannot stand. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) ("The so-called canon of constitutional avoidance is an interpretive tool, counseling that ambiguous statutory language be construed to avoid serious constitutional doubts.")



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

For example, the State's attempted application of MTCA to reach industrial emissions and discharges in foreign nations violates the Foreign Commerce Clause.[5] The Commerce Clause of the U.S. Constitution reserves to Congress the exclusive power "to regulate Commerce with foreign Nations[.]" *See* U.S. Const., Art. I, Sec. 8, cl. 3. "The so-called dormant foreign Commerce Clause limits the power of states or municipalities to regulate such commerce, which is 'pre-eminently a matter of national concern.'" *See Levin v. Richmond Terminal Corp. v. City of Richmond*, 482 F.Supp.3d 944, 957 (N.D. Cal. 2020) (quoting *Japan Line, Ltd. v. Los Angeles Cty.*, 441 U.S. 434, 448 (1979)).[6] When construing Congress' power to "regulate Commerce with foreign Nations," and the negative implications of that power, courts must apply an even more demanding constitutional inquiry than is required for the power to regulate interstate commerce. *See Japan Line*, 441 U.S. at 446. A state law or regulation

---

[5] While Teck focuses its analysis here on the Foreign Commerce Clause, the State's interpretation of MTCA likely also runs afoul of the Foreign Affairs doctrine. "Under the foreign affairs doctrine, state laws that intrude on this exclusively federal power are preempted." *Movsesian v. Victorian Verischerung AG*, 670 F.3d 1067, 1071 (9th Cir. 2012). "[E]ven in the absence of any express federal policy," a state law is invalid "if it intrudes on the field of foreign affairs without addressing a traditional state responsibility." *Id*. at 1072. By interpretating MTCA to reach any foreign emissions or discharges that eventually pass into Washington State, the State intrudes on the federal government's power to negotiate with foreign nations regarding international environmental policies.

[6] Federal courts have long found that the dormant Commerce Clause forbids states from discriminating against or unduly burdening foreign or interstate commerce, based on the negative inference that if only Congress has jurisdiction over foreign and interstate commerce, then states do not. Thus, even when Congress has not acted, its jurisdiction remains exclusive. *See Barclays Bank PLC v. Franchise Tax Bd. of California*, 512 U.S. 298, 310 (1994) (The Commerce Clause "has long been understood, as well, to provide "protection from state legislation inimical to the national commerce [even] where Congress has not acted...."") (citations omitted).



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

violates the dormant Foreign Commerce Clause if it directly, or in its practical effect, regulates commerce that occurs wholly outside the state's borders, "whether or not the commerce has effects within the State." *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989).[7] A state law or regulation will also violate the dormant Foreign Commerce Clause if it interferes with federal government's ability to "speak with one voice when regulating commerce with foreign governments," *see Japan Line*, 441 U.S. at 449.

Here, the State seeks to apply a state statute to a Canadian company, and enforce the State's rules to aerial emissions, when the federal courts have already determined that federal law (CERCLA) cannot reach those emissions. And it attempts to use that state law, to achieve a broader result than obtainable under federal law, to exact damages that it contends result from commercial activity carried out entirely in Canada. Application of MTCA under these circumstances would violate the dormant Foreign Commerce Clause.

## II. CONCLUSION

For the foregoing reasons, Teck respectfully requests that the State's Claim Seven in its Fifth Amended Complaint be dismissed, with prejudice.

---

[7] In *National Pork Producers Council v. Ross*, 6 F.4th 1021 (9th Cir. 2021), the Ninth Circuit ruled that this and other statements by the U.S. Supreme Court "cannot mean what they appear to say," *id.* (quotation omitted), and limited the prohibition against extraterritorial regulation to price control and price affirmation statutes, *id.* at 1028. The Supreme Court, which recently granted review of that decision, may well disagree. 2022 WL 892100 (U.S. March 28, 2022). Accordingly, to preserve this issue, Defendant respectfully contests the Ninth Circuit's ruling.



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441

WITHERSPOON BRAJCICH McPHEE, PPLC

*/s/Bryce J. Wilcox*
BRYCE J. WILCOX WSBA# 21728
601 W. Main Avenue, Suite 741
Spokane, WA 99201
Telephone: (509) 455-9077
Fax: (509) 624-6441
Email: BWilcox@workwith.com

Attorneys for Defendant Teck Metals Ltd., formerly known as Teck Cominco Metals Ltd.

Additional Counsel:

Thomas. A. Campbell, *pro hac vice*
PILLSBURY WINTHROP SHAW PITTMAN LLP
909 Fannin, Suite 2000
Houston, TX 77010
(713) 276-7600
Tom.Campbell@pillsburylaw.com

Mark E. Elliott, *pro hac vice*
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, Floor 36
Los Angeles, CA 90017
(213) 488-7100
Mark.Elliott@pillsburylaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

*/s/Bryce J. Wilcox*
Bryce J. Wilcox



WITHERSPOON BRAJCICH MCPHEE, PLLC
601 West Main Avenue, Suite 714
Spokane, Washington 99201
Telephone: (509)455-9077 Fax: (509)624-6441